797 A.2d 232

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James LAMBERT, Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 3, 1999.

Decided Dec. 31, 2001.

348

354

Daniel Silverman for appellant.

Catherine Marshall, Robert A. Graci, Philadelphia, for appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice CASTILLE.

In this appeal from the denial of appellant's petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*, appellant alleges various claims of trial court error, prosecutorial misconduct, and ineffective assistance of counsel. For the reasons set forth below, we find that appellant is not entitled to relief and, accordingly, we affirm the order of the PCRA court.[1]

Appellant was convicted on April 25, 1984, of first degree murder, robbery, conspiracy, and related offenses in connection with the murder of two patrons during a robbery of a bar in Philadelphia.[2] The jury found three aggravating circumstances, which it determined outweighed the single mitigating circumstance it found and, therefore, returned a sentence of death.[3] This Court affirmed appellant's conviction and sen-

---

**1.** This Court's disposition of this appeal has not included a consideration of the Commonwealth's brief, since that brief was not filed in a timely manner and, therefore, was deemed lodged but not accepted for filing.

**2.** The facts underlying appellant's conviction are set forth in detail in this Court's opinion on direct appeal. *Commonwealth v. Lambert,* 529 Pa. 320, 603 A.2d 568 (1992).

**3.** The aggravating circumstances were that the killing was committed during the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6); that, in the

tence on direct appeal. *Commonwealth v. Lambert*, 529 Pa. 320, 603 A.2d 568 (1992). Appellant was represented by the same counsel at trial and on direct appeal.

Appellant filed a *pro se* PCRA petition on June 15, 1995. Several attorneys were appointed by the PCRA court and subsequently permitted to withdraw. Ultimately, appellant retained present counsel, who filed an amended petition on January 30, 1997. Supplemental petitions were filed on July 30, 1997 and October 23, 1997. On January 29, 1998, the PCRA court dismissed the petition without a hearing. This appeal followed.[4]

commission of the offense, appellant knowingly created a grave risk of danger to another person in addition to the victim of the offense, *Id.* § 9711(d)(7); and that appellant had a prior conviction for another federal or state offense committed either before or at the time of the offense for which a sentence of life imprisonment or death was imposable, *Id.* § 9711(d)(10). The mitigating circumstance was the absence of significant prior felony convictions. *Id.* § 9711(e)(1).

4. At the time his brief was filed in this Court, appellant also filed a Motion for Remand to the PCRA Court on the Basis of Newly Discovered Evidence—specifically, a study of the Philadelphia criminal justice system by professors David Baldus and George Woodworth (the "Baldus–Woodworth study"), and an alleged 1987 training videotape made by an assistant district attorney (the "McMahon tape")—and a Motion for Remand for Meaningful Judicial Review and Disqualification of PCRA Judge or, in the alternative, Motion for Order that Lower Court Draft an Opinion. On December 20, 1999, this Court denied the motion for remand based on after-discovered evidence, but granted relief on the second motion, as we directed the PCRA court to write a Pa.R.A.P.1925(b) opinion, *see Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167 (1999), which it has since done.

Appellant's brief attempts to incorporate the judicial disqualification and after-discovered evidence issues raised in the motions by reference as Arguments XXI and XXII. Brief for Appellant at 90–91. We will not further consider these claims. The after-discovered evidence claim and the request to order the PCRA court to file an opinion were already disposed of in our December 20th orders. The alternative request that the PCRA judge be disqualified as biased was at least indirectly disposed of when we ordered only that the PCRA court prepare an opinion. In addition, even if the judicial disqualification claim and the after-discovered evidence claim could be revisited after having been the subject of a motion, they fail because appellant does not argue them in his brief. All claims for relief must be set out in the brief and not merely incorporated by reference. *Commonwealth v. Edmiston*, 535 Pa. 210, 634 A.2d 1078, 1092 n. 3 (1993) (all claims appellant wishes Court to consider must be set out in brief and not merely incorporated by

Because appellant's initial petition in this matter was filed before January 17, 1996, the effective date of numerous amendments to the PCRA, his petition is governed by the version of the PCRA in effect prior to that time. To be eligible for relief under that version of the PCRA, appellant must plead and prove by a preponderance of the evidence all of the following:

(1) That the person has been convicted of a crime under the laws of this Commonwealth and is

(i) currently serving a sentence of imprisonment, probation or parole for the crime;

(ii) awaiting execution of a sentence of death for the crime; or

(iii) serving a sentence which must expire before the person may commence serving the disputed sentence.

(2) That the conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of Pennsylvania or laws of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused an individual to plead guilty.

reference); *see also Commonwealth v. Rodgers,* 413 Pa.Super. 498, 605 A.2d 1228 (1992), *alloc. denied,* 532 Pa. 655, 615 A.2d 1311 (1992) (appellate brief is not appropriate vehicle for incorporation by reference of matter appearing in previously filed legal documents). Appellant requested and was granted leave to file a brief in excess of seventy, but less than 100, pages. To permit appellant to incorporate by reference his previous motions would effectively allow him to more than double the original briefing limit.

(iv) The improper obstruction by Commonwealth officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) A violation of the provisions of the Constitution, law or treaties of the United States which would require the granting of Federal habeas corpus relief to a State prisoner.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

(3) That the allegation of error has not been previously litigated and one of the following applies:

(i) The allegation of error has not been waived.

(ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

(iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

(4) That the failure to litigate the issue prior to or during trial or on direct appeal could not have been the result of any rational strategic or tactical decision by counsel.

42 Pa.C.S. § 9543(a).

 At the outset, appellant raises several claims that were addressed by this Court on direct appeal; the claims therefore would appear to be previously litigated. Under the PCRA, a claim is previously litigated if, *inter alia*, the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. 42 Pa.C.S. § 9544(a)(2).

■■ Appellant argues that, for various reasons, none of his claims should be deemed previously litigated. Thus, appellant contends that the trial court erred in: (1) prohibiting him from presenting evidence of other crimes committed by his co-conspirators (Argument II); and (2) allowing his co-defendant to present testimony of a witness which identified appellant as the shooter after ruling that the Commonwealth could not present the same evidence (Argument III). Appellant argues that these claims were not previously litigated on direct appeal because, there, he argued that these trial court errors were only examples of how he was prejudiced by a joint trial with co-defendant Bruce Reese, rather than as separate, stand-alone claims of trial court error. Appellant's distinction is immaterial for previous litigation purposes. The relevant point is that, on direct appeal, this Court addressed the propriety of those evidentiary rulings in our determination that the trial court did not err in denying appellant's motion for severance. *Lambert*, 603 A.2d at 574 (holding that, even in separate trial, other crimes evidence would not have been admissible and identification testimony would have been admissible). Moreover, that discussion was not mere *dicta* but was necessary to the ruling on the severance claim. We could not grant relief to appellant on his present claims without disavowing the previous ruling. Because the merits of these claims were decided by the Court on direct appeal, they have been previously litigated and are not cognizable under the PCRA. 42 Pa.C.S. § 9543(a)(3); *Commonwealth v. Miller*, 560 Pa. 500, 746 A.2d 592, 598 (2000).

■■ Appellant attempts to revive three other previously litigated claims by arguing that appellate counsel was ineffective in the manner in which he raised and presented the claims on direct appeal. The three such claims litigated on direct appeal are appellant's claims that (1) the trial court erred in denying his motion for severance (Argument IX) (rejected at *Lambert*, 603 A.2d at 572–75); (2) there was racial bias in jury selection (Argument X) (rejected at *id.* at 577); and (3) the trial court erred in defining "preponderance of the evidence" as "less of a margin than by a reasonable doubt" (Argument

360

XVIII) (rejected at *id.* at 576–77). Generally, a PCRA petitioner cannot obtain post-conviction review of claims that were previously litigated by alleging ineffectiveness of prior counsel and presenting new theories to support the previously litigated versions of the claims. *See, e.g., Miller,* 746 A.2d at 602 n. 9; *Commonwealth v. Copenhefer,* 553 Pa. 285, 719 A.2d 242, 253 (1998); *Commonwealth v. Whitney,* 550 Pa. 618, 708 A.2d 471, 476 (1998). Because appellant is merely attempting to relitigate claims that were litigated on direct appeal, these claims are not cognizable under the PCRA. 42 Pa.C.S. § 9543(a)(3).

■■■■■ Ten of appellant's remaining claims concern issues that could have been raised on direct appeal but were not and they are, therefore, waived under the PCRA. 42 Pa.C.S. § 9544(b) (issue is waived if petitioner failed to raise it and it could have been raised before trial, at trial, on appeal, in habeas corpus proceeding, or in prior proceeding under PCRA); *Commonwealth v. (Michael) Pierce,* 567 Pa. 186, 786 A.2d 203, 212–13 (2001)[5] Six additional claims were not raised

5. The ten waived claims are as follows:
 (1) Whether the Commonwealth violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by allegedly failing to disclose the true extent of its agreement with co-conspirator, Bernard Jackson, made in exchange for Jackson's testimony (Argument I).
 (2) Whether the trial court erred in failing to instruct the jury regarding identification testimony (Argument IV).
 (3) Whether the trial court erred in admitting inadmissible hearsay from a co-conspirator (Argument V).
 (4) Whether the trial court gave incomplete instructions on bias and a witness's prior *crimen falsi* convictions (Argument VI).
 (5) Whether the prosecutor engaged in misconduct in his guilt phase closing argument (Argument VII).
 (6) Whether the trial court erred in prohibiting defense counsel from testifying to establish the bias of the only identification witness (Argument VIII).
 (7) Whether the trial court misled the jury concerning the role of appellate review (Argument XIV).
 (8) Whether the trial court and the prosecutor misinformed the jury regarding aggravating circumstance § 9711(d)(7), *i.e.,* knowingly creating "a grave risk of death to another person in addition to the victim of the crime" (Argument XV).
 (9) Whether the trial court erred in not instructing the jury that mitigating circumstances need not be found unanimously and that a

in appellant's PCRA petition and, accordingly, are waived for that distinct reason. Pa.R.A.P. 302(a) ("Issues not raised before the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 725 (2000); *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 704 (1998).[6]

qualitative analysis must be applied when weighing aggravating and mitigating circumstances (Argument XVI).

(10) Whether appellant's waiver of his right to present mitigating evidence during the penalty phase was knowing, intelligent and voluntary (part of Argument XIX).

All but the first of these claims involve events at trial. As to that first claim, which alleges a *Brady* violation, appellant asserts that, although the alleged "true extent" of Jackson's plea arrangement with the Commonwealth was unavailable to counsel at trial, it was available at the post-verdict and appeal stages. Brief for Appellant at 16. This is undoubtedly so. The factual basis for appellant's allegation that there was more to Jackson's arrangement than had been disclosed is a June 18, 1984 guilty plea and sentencing proceeding pertaining to Jackson's eight open robbery cases, where the prosecutor detailed Jackson's cooperation in this and other cases and recommended a favorable plea and sentence. Appellant alleges that this proceeding proves that there must have been an agreement at the time of trial that encompassed the open robberies. The June 18 proceeding occurred two months after trial here, while post-verdict motions in this case were pending until May 5, 1986, with appellant's last set of motions being filed in March of 1986. *See* Opinion, Geisz, J., 2/9/87, at 4–5. Furthermore, trial counsel actually interviewed Jackson, at Jackson's request, during the pendency of post-verdict motions. That interview served as the basis for an after-discovered evidence claim that was rejected by this Court on direct appeal. *See Lambert*, 603 A.2d at 572, 579–80. Thus, appellant is correct that the basis for the *Brady* claim was available on post-verdict motions and direct appeal; the claim not having been raised on direct appeal, it is waived under the PCRA.

6. Appellant argues for the first time in this appeal that he was denied the right to testify at the guilt phase (part of Argument XII; his argument concerning the penalty phase was raised below); that trial counsel abandoned him by failing to present an opening argument during the penalty phase (Argument XVII); that the trial court erred in failing to hold a hearing to determine his competency to waive his right to present mitigating evidence (part of Argument XIX); and that the cumulative effect of the errors entitles him to relief (Argument XX). Appellant also alleges for the first time in this appeal that trial counsel "abandoned" him at trial by making personal attacks on witnesses, the prosecutor and the trial judge and by engaging in other unprofessional conduct (Argument XI); and by failing to present mitigation evidence or a closing argument during the penalty phase (Argument XVII). In his PCRA petition, appellant raised claims of ineffective assistance of counsel based on the facts underlying these two claims but did not

■■■ Appellant recognizes that the claims identified in footnote five are waived under the PCRA. He addresses the waiver by appending boilerplate allegations of ineffective assistance of prior counsel for failing to raise or properly litigate these issues on post-verdict motions and/or direct appeal. In a related argument, appellant addresses the waiver of one of the claims identified in footnote six by appending an additional boilerplate allegation that present counsel, who also represented appellant in the PCRA proceeding below, was ineffective for failing to raise the issue. (Specifically, appellant alleges that present PCRA counsel was ineffective for failing to claim that appellant was denied his right to testify during the guilt phase (included as part of Argument XII)).

■■■ None of the claims in footnotes five and six are identified as ineffectiveness claims in appellant's statement of questions presented or even in his argument headings. In addition, appellant's allegations of ineffectiveness with respect to these waived claims invariably consist of no more than a one-sentence conclusory statement that counsel was ineffective for failing to raise the claim at trial, on direct appeal, or in the PCRA proceeding. Appellant nevertheless believes that his boilerplate allegations of previous counsel ineffectiveness "overcome any waiver which might otherwise exist." Reply Brief at 3.[7]

■■■ Preliminarily, the allegation that trial/direct appeal counsel was ineffective does not account for appellant's failure to raise certain of his claims in the PCRA proceeding below. Accordingly, since appellant does not even attempt to account for his failure to raise the claims listed in footnote six in the

allege abandonment by counsel. Appellant does not pursue the ineffectiveness version of the claims in this appeal, instead preferring the new "counsel abandonment" theory.

7. Appellant does not claim that his waived issues are reviewable under this Court's practice of relaxed waiver on direct appeal capital appeals, nor could they be. This Court has made clear that relaxed waiver does not apply to capital PCRA appeals. *Commonwealth v. Kemp*, 562 Pa. 154, 753 A.2d 1278, 1285 (2000); *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 700 (1998). This Court has no authority to "relax" the PCRA's bar on waived claims.

PCRA court—with the exception of the guilt phase claim outlined in Argument XII, which will be discussed separately below—those claims are unreviewable on this appeal. Pa. R.A.P. 302(a); *Commonwealth v. Basemore, supra.*

Turning to the ten waived claims identified in footnote 5, the question of what is waived and what, if any, PCRA waiver may be "overcome" by appellant's allegations of ineffectiveness does not operate as appellant apparently thinks it does. The versions of these claims that could have been raised before—*e.g.*, the actual claims of trial court error and/or prosecutorial misconduct that appellant develops in his brief— are waived without qualification under the PCRA; and nothing appellant has alleged respecting counsel's stewardship can "overcome" that statutory waiver and revive those claims. What would **not** be deemed waived under the PCRA are the allegations of ineffectiveness themselves. *(Michael) Pierce, supra.* Although often "derivative," *Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517, 525 n. 5 (2001), claims of counsel ineffectiveness are nevertheless analytically and constitutionally distinct from the underlying claims to which they relate. The reason appellant's claims of trial/direct appeal counsel ineffectiveness are not waived is that, appellant having been represented by the same counsel on direct appeal as at trial, this PCRA proceeding is deemed to represent appellant's first opportunity to raise claims regarding the stewardship of trial/direct appeal counsel. Furthermore, the ineffectiveness claims are **cognizable** under the PCRA, at least in the abstract, because the PCRA explicitly states that they are. 42 Pa.C.S. § 9543(a)(2)(ii).

This question of waiver under the **PCRA,** of course, is distinct from the question of whether appellant has sufficiently developed his claims of ineffectiveness in his appellate brief so as to enable this Court to conduct an effective appellate review of them. The distinct question of waiver under this Court's Rules of Appellate Procedure and principles of appellate jurisprudence is one that has recently divided the Court, as is reflected in the various opinions filed in *Commonwealth v. Marrero,* 561 Pa. 100, 748 A.2d 202 (2000), and, more recently,

364

in *Commonwealth v. Williams, supra.* The prevailing view in *Marrero* was that a boilerplate assertion that direct appeal counsel was ineffective for failing to raise five claims of trial counsel's ineffectiveness, made in Marrero's statement of questions presented, was sufficient to properly layer the claims and overcome a finding that the appellate counsel ineffectiveness claims were waived on appeal. 748 A.2d at 203–04 & n. 1. The *Williams* Court, speaking in the context of "layered" ineffectiveness claims, cautioned that, although some latitude may be afforded in the pleadings, PCRA counsel generally "must, in pleadings and briefs, undertake to develop, to the extent possible, the nature of the claims asserted **with respect to each individual facet** of a layered ineffectiveness claim, including that which relates to appellate counsel." 782 A.2d at 525 (emphasis supplied).

*Williams* made clear that the appellate jurisprudence waiver under discussion there and in *Marrero* concerned only what was necessary to "invoke substantive review." Thus, neither *Marrero* nor *Williams* purported to afford latitude with respect to what was necessary for a PCRA petitioner to actually prevail on the substantive merits of a claim of ineffective assistance of counsel. *Williams,* 782 A.2d at 525 & n. 5 ("[w]e make no suggestion here that there should be a relaxation of the substantive Sixth Amendment standard."); *see also id.* at 527 (Zappala, J., concurring) (*Marrero* merely expressed view that boilerplate assertion of ineffectiveness is sufficient to overcome waiver, but did not set forth how such claims should be developed); *id.* at 534 (Castille, J., concurring) (noting distinction between waiver under PCRA and waiver as question of appellate jurisprudence, and noting separate question of substantive standards for analyzing claims of ineffective assistance).

 In light of the non-waiver holding in *Marrero* and the discussion of waiver in *Williams,* as well as bedrock principles of *stare decisis,* appellant's strictly boilerplate allegations of counsel ineffectiveness here must be deemed sufficient for him to "overcome" any waiver that might arise from this Court's appellate jurisprudence and render those claims

of counsel ineffectiveness reviewable on this appeal. Turning to the merits of the claims, this Court employs the substantive Sixth Amendment standards articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its progeny. *See Williams*, 782 A.2d at 525 & n. 5.[8] In this merits analysis, it is clear that appellant's failure to forward relevant argumentation as to each necessary "individual facet" of the *Strickland* standard dooms his boilerplate claims to failure. *See (Michael) Pierce*, 786 A.2d at 221–22 *Commonwealth v. Rivers*, 786 A.2d 923, 929 (Pa.2001) (Opinion Announcing Judgment of Court).[9]

The constitutional ineffectiveness standard requires that appellant show that: (1) the underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the

8. In *Commonwealth v. (Charles) Pierce*, 515 Pa. 153, 527 A.2d 973 (1987), this Court recognized that *Strickland's* two-part performance and prejudice test was the same test for ineffectiveness as under the Pennsylvania Constitution. This Court has come to characterize the test as a tripartite one, by dividing the performance element into two distinct parts, *i.e.*, arguable merit and lack of reasonable basis.

9. Like any legal claim, an ineffectiveness claim may fail for a number of independently valid reasons. In rejecting the layered, boilerplate claims of appellate counsel ineffectiveness presented in *Marrero*, this Court looked to the underlying claims of counsel ineffectiveness, which it deemed meritless. That is an available and appropriate, but not a required or exclusive, approach to claims of ineffectiveness. *See Rivers*, 786 A.2d at 929–30 (Castille, J., concurring). Both the U.S. Supreme Court and this Court have made clear that a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first. *See Smith v. Robbins*, 528 U.S. 259, 286 n. 14, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000), *citing Strickland*, 466 U.S. at 697, 104 S.Ct. 2052; *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 701 (1998). Here, appellant's arguments, at best, could be construed as attempting to establish the arguable merit of his underlying waived claims while he then simply assumes that the failure to pursue such claims automatically renders counsel ineffective. This *per se* approach to ineffectiveness fails to establish **either** the performance prong (*i.e.*, lack of reasonable basis) or the prejudice prong of the *Strickland* test. Accordingly, the claims fail on the merits.

proceedings would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326, 333 (1999); *see also Strickland*, 466 U.S. at 687, 104 S.Ct. 2052 (defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that defendant was prejudiced by the deficient performance). The ineffectiveness standard is the same under the PCRA as it is on direct appeal. *Kimball*, 724 A.2d at 331–32.

To the extent that appellant assails prior counsel for his failure to raise claims on appeal, as opposed to his failure to raise them at trial, that is a stage of the proceeding that is also subject to the settled *Strickland* test for counsel ineffectiveness. *Smith v. Robbins*, 528 U.S. 259, 285–89, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (petitioner "must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel").[10] Claims involving appellate counsel ineffectiveness, moreover, involve concerns unique to appellate practice. Arguably meritorious claims may be omitted in favor of pursuing claims which, in the exercise of appellate counsel's objectively reasonable professional judgment, offer a greater prospect of securing relief. *Jones v. Barnes*, 463 U.S. 745, 750–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). "[A]ppellate counsel ... need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins*, 528 U.S. at 288, 120 S.Ct. 746 (characterizing *Barnes*). "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), *quoting Barnes*, 463 U.S. at 751–52, 103 S.Ct. 3308. *See also*

10. We recognize that appellant was represented by trial counsel on direct appeal. In light of this Court's relaxed waiver doctrine in capital case direct appeals, counsel could have forwarded on that appeal claims of trial error that had not been raised below. Counsel's appellate performance is subject to separate, distinct review, triggering the considerations discussed in the text.

*Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir.1999) ("One element of effective appellate strategy is the exercise of reasonable selectivity in deciding which arguments to raise.").[11]

To the extent that appellant assails present counsel's performance in the PCRA court, it is worth noting that the concerns attending that level of representation also are not necessarily identical to the concerns involved when examining counsel's performance at trial or on a direct appeal as of right. Most fundamentally, the right to counsel underlying any claim that PCRA counsel was ineffective does not derive from or implicate the Sixth Amendment, there being no federal right to counsel upon state collateral review. Instead, that right to counsel arises from the Pennsylvania Rules of Criminal Procedure, *see* Pa. R.Crim. P. 904 (formerly Rule 1504), which we have held confer an enforceable right to the effective assistance of PCRA counsel. *Commonwealth v. Gamboa–Taylor*, 562 Pa. 70, 753 A.2d 780, 787 (2000); *Albrecht*, 720 A.2d at 699–700.[12] Certainly, appellant does not suggest that the test for PCRA counsel ineffectiveness should be **more** exacting of

11. Mr. Justice Zappala's Concurring Opinion takes issue with the summary of the standards governing claims of appellate counsel ineffectiveness, opining that the position stated therein represents only the position of this author and not that of a majority of the Court. In fact, the summary of law above is of federal law as explicated by the U.S. Supreme Court, which is binding on this Court in Sixth Amendment matters. Notably, the concurrence cites to no cases from the U.S. Supreme Court articulating a different standard. Mr. Justice Zappala, of course, dissented in *(Charles) Pierce*, where he expressed the view that this Court should not follow *Strickland* but should follow a different standard for assessing claims of ineffective assistance of counsel under the Pennsylvania Constitution. Notwithstanding that dissent, however, *(Charles) Pierce* and *Strickland* are the settled law in Pennsylvania. Moreover, there is no claim in this case for a different or more exacting test for counsel effectiveness under the Pennsylvania Constitution. In short, the contrary "position" advocated by the concurrence in this case, while it may be consistent with the "position" advocated in the *(Charles) Pierce* dissent, is inconsistent with governing law and simply reflects a refusal to accept *stare decisis*.

12. In light of the Rules-based conferral of a right to PCRA counsel, this Court has not decided whether there is a state constitutional right to counsel upon PCRA review. *Albrecht*, 720 A.2d at 699 & n. 6; *Commonwealth v. Priovolos*, 552 Pa. 364, 715 A.2d 420, 421–22 (1998).

PCRA counsel than the test demanded where a federal constitutional right to counsel is implicated.

Appellant's mere boilerplate allegations in this case are inadequate to meet his burden of demonstrating ineffectiveness at trial, on appeal, or in the PCRA proceeding below. *(Michael) Pierce*, 786 A.2d at 221–22 *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332, 1335 (1981) (mere abstract or boilerplate allegations of ineffectiveness "cannot be ineffectiveness"). *See also Commonwealth v. Morris*, 546 Pa. 296, 684 A.2d 1037, 1045 (1996) (speculative claim of ineffectiveness summarily rejected; ineffectiveness claims cannot be raised in vacuum) (citing cases); *Commonwealth v. Hutchinson*, 521 Pa. 482, 556 A.2d 370, 372 (1989) (defendant bears burden of proving allegations of ineffective assistance by submission of relevant proofs); *Commonwealth v. Hentosh*, 520 Pa. 325, 554 A.2d 20, 24 (1989) (same). *Accord Commonwealth v. Ragan*, 538 Pa. 2, 645 A.2d 811, 828–29 (1994) (boilerplate allegation is no basis for relief in capital PCRA appeal). For example, appellant has not even begun to argue why counsel at trial, and on appeal, was constitutionally obliged to raise the claims/theories that new counsel has identified in hindsight instead of, or in addition to, the ten claims that counsel actually pursued at trial and on appeal. *See Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986) ("Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of counsel be overcome."), *quoted with approval in Robbins*, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). In this regard, it is notable that appellant in fact obviously does not believe that the claims counsel actually pursued on direct appeal were entirely baseless, since appellant has attempted to re-litigate a number of those claims on this PCRA appeal.

Nor has appellant proffered any relevant argument on the prejudice prong of the *Strickland* test. *(Michael) Pierce*, 786 A.2d at 221–22 ("Absent a demonstration of prejudice, Appellant cannot prevail on a claim of ineffective assistance of counsel and no further inquiry into the claim is warranted."). The prejudice standard is distinct from the

harmless error standard that would apply to appellant's underlying claims if they had been preserved and raised on direct appeal. *See Williams,* 782 A.2d at 524–25 (outlining distinction between harmless error and ineffectiveness prejudice), *citing Commonwealth v. Howard,* 538 Pa. 86, 645 A.2d 1300, 1307–08 (1994) (same). The U.S. Supreme Court has emphasized that there are only "three categories of cases, described in *Strickland,* in which we presume prejudice rather than require a defendant to demonstrate it." *Robbins,* 528 U.S. at 287, 120 S.Ct. 746. Those categories involve claims demonstrating (1) an actual denial of counsel, (2) state interference with counsel's assistance, or (3) an actual conflict of interest burdening counsel. *Id.* None of appellant's claims involve situations where prejudice may be thus presumed. Appellant's failure to prove prejudice, thus, is independently fatal to his claims. *See Albrecht,* 720 A.2d at 701 ("If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone.")

■ In summary, trial/direct appeal counsel cannot be deemed ineffective *per se* for failing to identify and pursue the ten claims identified in footnote five, nor can PCRA counsel be deemed ineffective *per se* for failing to raise the claim that appellant was denied his right to testify during the guilt phase. Appellant has failed to demonstrate how previous counsel were actually ineffective with respect to these claims, and this Court will not make appellant's arguments for him. *Williams,* 782 A.2d at 525 ("[O]ur general practice is to review claims as presented according to our established standards of review.") Because appellant has failed to prove these claims of ineffectiveness, they fail on the merits.[13]

13. Citing to *dicta* in *Williams,* the dissenting opinion by Mr. Justice Saylor would remand this matter because the dissent views this case as being "substantially similar" to *Williams* and apparently deems PCRA appellate counsel's stewardship to be deficient. Unlike in *Williams,* however, in this case the Court has **already** remanded for, and received, the PCRA court's opinion. To the extent Justice Saylor is concerned with the adequacy of PCRA appeal counsel's stewardship, no such issue is raised before us and we will not raise such a substantive claim *sua sponte. Williams,* 782 A.2d at 525. To raise the claim Mr. Justice

There are two remaining claims for this Court's review: the portion of Argument XII alleging that trial counsel prevented appellant from testifying at the penalty phase;[14] and Argument XIII, that trial counsel was ineffective in closing argument for informing the jury that appellant was held without bail during his trial and that counsel was court-appointed. Neither claim merits relief.

During a discussion in chambers, appellant initially indicated that he wished to testify at the penalty phase. Trial counsel explained that he had advised appellant not to testify because appellant wished to argue in the penalty phase that he was innocent, counsel was concerned about appellant's temper, and counsel was concerned that appellant's testimony would open the door for the Commonwealth to introduce appellant's prior record. N.T. 4/25/84 at 44–46. Following counsel's recitation of the reasons he had advised appellant not to testify, appellant stated on the record that he had changed his mind and did not wish to testify after all. *Id.* at 47.

Although not specifically articulated as such, appellant's present claim can only be that trial counsel was ineffective for interfering with appellant's right to testify; indeed, the cases

Saylor would address *sua sponte* would be more extraordinary than applying relaxed waiver on PCRA appeals, a practice this Court has repeatedly disavowed. *Id.* at 524; *Basemore,* 744 A.2d at 725–26; *Albrecht,* 720 A.2d at 700. Under this approach, the Court would not merely be overlooking a failure to properly or technically preserve a claim of record actually pursued on appeal—the practice under relaxed waiver—but would be engaged in advocacy on behalf of a litigant, by raising new substantive claims on appeal.

The concurring opinion by Mr. Justice Cappy also discusses the *dicta* in *Williams,* though Mr. Justice Cappy obviously concludes that the impact of that *dicta* here is different. Both Messrs. Justice Cappy and Justice Saylor speak about the obligations of the PCRA court in light of the *Williams dicta.* In fairness to the PCRA court in this case, it bears noting that this matter was resolved by that court on January 29, 1998, almost ten full months before this Court's non-prospective holding in *Albrecht* concerning relaxed waiver, and almost four years before *Williams.* Suggestions that the PCRA court should have acted differently in response to the pleadings here should focus on the law at that time, and not in light of the pronouncements in *Williams.*

14. Appellant's related claim that he was denied his right to testify during the guilt phase of trial has been waived. *See* note 6 above.

cited by appellant all deal with ineffectiveness. As we recently stated,

> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for "failing to call the appellant to the stand," the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

*Commonwealth v. Uderra,* 550 Pa. 389, 706 A.2d 334, 340 (1998). Appellant fails to so much as argue, much less establish, that counsel's advice was unreasonable. Nor does he provide any support for his bald allegation that counsel's advice somehow "prevented" him from testifying. To the contrary, the record reveals that the decision was a fully informed one made by appellant himself. Because counsel's advice was not unreasonable and appellant freely decided, after hearing that advice, not to testify, appellant's claim that counsel deprived him of his right to testify is meritless.

 With respect to trial counsel's closing argument, appellant claims that counsel's references to his bail status and to the fact that counsel was court-appointed prejudiced appellant because they indicated to the jury that appellant was poor and thereby established a motive for the underlying robbery. However, appellant's attack on counsel disregards the context in which counsel's statements were made. Counsel's statement that appellant had been held without bail since his arrest was made in the context of rebutting the prosecutor's evidence and argument that appellant's attempts to elude arrest demonstrated his consciousness of guilt. Trial counsel argued that, to the contrary, anyone, whether innocent or guilty, who knew that he faced an extended period in jail without bail might be inclined to avoid apprehension because "jail is not a nice place." N.T. 8/23/84 at 123–24. Therefore, because trial counsel had a reasonable basis for referring to appellant's bail

status, he was not ineffective for doing so.[15] *Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261, 275 (2000) (where counsel had reasonable basis for not calling certain witnesses during guilt phase, appellant was not entitled to relief for claim of ineffective assistance of counsel).

Appellant also disregards the context of trial counsel's statement that he was court-appointed. Trial counsel argued to the jury that he was not being paid by appellant or his family to argue his innocence, nor did he know the Lambert family. N.T. 8/23/84 at 98. The implication of counsel's argument was that he was not acting out of a personal or financial interest but out of an objective belief in his client's innocence. Although a somewhat inaccurate argument in light of the fact that counsel *was* being paid by the court and had not volunteered to represent appellant *pro bono*, it was nonetheless reasonably intended to persuade the jury as to appellant's innocence. Furthermore, counsel in no respect suggested by this argument that appellant had a motive to commit robbery. The notion that the jury inevitably drew that particular conclusion is based on mere speculation. Therefore, appellant is not entitled to relief on this claim. *Fletcher, supra.*

Finally, appellant alleges in a cursory manner that the PCRA court erred by not holding a hearing on certain of his arguments; in addition, in the conclusion to his brief, he requests, as an alternative form of relief, that "the matter be remanded for an evidentiary hearing on all or certain claims." Brief for Appellant at 92. A PCRA court may deny a petition without a hearing if, following a review of the petition, it determines a hearing would serve no purpose. Pa. R.Crim. P. 1509(C)(1) (now codified as Rule 909(C)(1)). Because we have

15. Furthermore, appellant's allegation that the comment implied that he was poor, thereby providing a motive for robbery, is belied by the record. Trial counsel merely reminded the jury, as they had heard during the testimony by Bernard Jackson, that people charged with murder do not get bail and that, therefore, appellant had been in jail for over a year without bail. N.T. 8/23/84 at 123–24. Accordingly, appellant's incarceration cannot be necessarily imputed to his financial status.

determined that appellant's claims are either previously litigated, waived or meritless, the PCRA court did not abuse its discretion in denying appellant's petition without first holding a hearing. *Commonwealth v. Thomas,* 560 Pa. 249, 744 A.2d 713, 717 (2000).

For the foregoing reasons, the order of the PCRA court denying appellant's petition is affirmed.[16]

Justice ZAPPALA files a concurring opinion.

Justice CAPPY files a concurring opinion.

Justice NIGRO, concurs in the result.

Justice SAYLOR files a dissenting opinion in which Chief Justice FLAHERTY joins.

ZAPPALA, Justice, concurring.

I concur in the result. I write separately to disassociate myself from the discussion by the author of the Opinion Announcing the Judgment of the Court of the particular standard for appellate counsel ineffectiveness set forth on pages 12 through 15, as I believe that represents the position of that author, rather than the position of a majority of this Court.[1] As I set forth my understanding of our Court's jurisprudence in this regard in my concurring opinion in *Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517 (2001), I need not repeat it here.

CAPPY, Justice, concurring.

I join the result reached by the majority. I distance myself from the analysis set forth therein and write separately to

16. The Prothonotary is hereby directed to transmit to the Governor's Office a full and complete record of the trial, sentencing hearing, imposition of sentence and review by the Supreme Court of Pennsylvania pursuant to 42 Pa.C.S. § 9711(i).

1. I am cognizant of the assertion made by the author of the Opinion Announcing the Judgment of the Court that this opinion "reflects a refusal to accept *stare decisis.*" Opinion Announcing the Judgment of the Court at 13 n. 11. Such a contention does not merit a response.

fully explain my view regarding appropriate appellate review in PCRA litigation.

I supported *Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517 (2001), a majority opinion, not only because it echoed the frustration I felt in conducting appellate review of post-conviction appeals in capital cases, but also, because it provided a rational and balanced means for resolving that frustration. I write now only to provide my unvarnished view of what *Williams* means to the conduct of litigation brought pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 et seq. (hereinafter the "PCRA" or the "Act").

*Williams* placed great emphasis on the function of the PCRA court as a gatekeeper in the arena of post-conviction litigation. In *Williams,* this court provided a roadmap for the post-conviction review process in capital cases, by putting meat on the bones of the process described in the PCRA. Essentially, we instructed the bench and bar that before this court will undertake appellate review in a PCRA matter the level of advocacy must meet the requirements of pleading and proof demanded by the Act, the decisional law following therefrom, and the Pennsylvania Rules of Criminal and Appellate Procedure.

This author anticipated that there would be a learning curve until the framework of *Williams* became absorbed into the regular course of post-conviction practice. In recognition of that learning curve, I anticipated that some PCRA capital cases would require a remand. Remand is not needed in those instances where the PCRA court carried out its function by conducting a merits review of the pleadings, holding a hearing where necessary, and explaining the reasons for its rulings. A remand is only necessary in those cases where the PCRA court failed to meet its obligations as gatekeeper. It is essential that the PCRA court force petitioners to prepare all collateral claims in accordance with the provisions of the Act for it is only if such compliance is mandated in a consistent manner that practitioners can fully understand what is expected of them. As gatekeeper, the PCRA court has the responsibility to explain where and how a PCRA petition is deficient,

to provide the opportunity for amendment to correct those deficiencies, to supply a forum for the full and fair opportunity to litigate evidentiary claims when needed, and to file an opinion adequately setting forth the reasons for its rulings.[1]

Let me put this bluntly: until the PCRA courts and practitioners prepare these cases in accordance with the dictates of *Williams,* we should continue to remand them and require that they be done correctly. Capital petitioners in this Commonwealth should receive the process to which they are due, no more, no less. Appellate review of PCRA matters can only proceed after the PCRA court has properly laid the groundwork so that the evenhanded distribution of justice will not threatened.

Although, initially, in attempting to groom the PCRA practice in Pennsylvania criticism could attach to the "remand approach", it is my view that if we stay the course as set forth in *Williams,* it will not be long before a reasoned and expeditious methodology is firmly rooted. Jurisprudentially, this is the goal, I believe, all of my colleagues aspire to in the realm of capital PCRA appellate review. Once sufficient time has passed for the dictates of *Williams* to become entrenched, the necessity to remand these matters will cease. Thereafter, we will enjoy a post-conviction practice that allows expeditious, meaningful and efficient appellate review of capital PCRA

1. Although this is not a traditional layering case, experience teaches that most PCRA claims are couched in terms of layered allegations of ineffectiveness of counsel. At the collateral stage, it is essential to consider the independent actions of all prior counsel at each stage of the proceeding, as they relate to the current claim of error in the collateral proceeding. It is not enough for a petitioner to argue the merits of the underlying claim and the prejudice suffered. At the PCRA stage, a petitioner must go the next step and elucidate how the underlying claim of error was handled by, or overlooked by, each intervening attorney in order to present a cognizable claim for collateral relief. Prior to *Williams,* this court permitted a merits review of the underlying claim of error by the PCRA court if the petitioner provided a boilerplate allegation of layered ineffectiveness. *See Commonwealth v. Marrero,* 561 Pa. 100, 748 A.2d 202 (2000). Post-*Williams,* where a petitioner initially fails to set forth a claim that is cognizable under the Act, or to adequately develop such claim in a manner that affords substantive review, the trial court *must* identify the deficiencies and, where necessary, permit amendment.

claims, a procedure, which complies with both the law and the spirit of due process.

Applying this concept to the case at bar, I would affirm the denial of the PCRA petition. In this case a further remand is not required for an evidentiary hearing and the PCRA court filed an adequate opinion permitting sufficient basis for appellate review. *See Commonwealth v. (Roy) Williams,* 557 Pa. 207, 732 A.2d 1167 (1999).

SAYLOR, Justice, dissenting.

In the present case, the PCRA court dismissed Appellant's post-conviction claims without a hearing in a manner substantially similar to the dismissal that was before the Court in *Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517 (2001). In my view, the accounting for *Williams* offered by the lead opinion here merely represents a restyling of points advanced by Mr. Justice Castille's concurring opinion from that case, embodying, *inter alia,* the concept that "this Court should deny review based solely upon deficiencies in post-conviction appellate briefs, although the briefs may themselves manifest ineffective assistance on the part of appellate post-conviction counsel for failing even to invoke the Court's review." *Williams,* 566 Pa. at 567 n. 5, 782 A.2d at 526 n. 5. However, the express intent of *Williams'* approach of requiring adherence to the rules governing post-conviction proceedings was to "protect the integrity of the process and the rights of a capital petitioner in the common pleas setting, [and] also to provide the essential predicate for appellate review of the post-conviction proceedings." *Id.* at 569, 782 A.2d at 527. By enforcing the rules, including the requirement that post-conviction courts provide reasonably specific pre-dismissal notice of the reasons supporting a summary disposition, such potential ineffectiveness should be exposed early in the process and, where appropriate, corrected by amendatory pleadings in furtherance of the interests identified above. Absent effective and consistently enforced controls, the Court can have little confidence that its dispositions of capital appeals in circumstances

such as are presented here reflect more than the ineptitude of post-conviction counsel.

Accordingly, as in *Williams,* I would remand the matter for disposition in accordance with our rules and decisional law as elaborated in that decision.

Chief Justice FLAHERTY joins in this dissenting opinion.