J-S19013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARKEITH AIKENS | : | |
| | : | |
| Appellant | : | No. 2334 EDA 2018 |

Appeal from the PCRA Order Entered July 11, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003098-2013

BEFORE:  BOWES, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 24, 2020**

Markeith Aikens appeals *pro se* from the dismissal of his first Post-Conviction Relief Act ("PCRA") petition.  After careful review, we affirm.

The trial court summarized the relevant factual history of this case as follows:

> Ms. Linda Tolbert testified that, at the relevant time, she owned and resided at 931 North 40th Street, Philadelphia, PA. The property was originally a three-story apartment complex that Ms. Tolbert had converted into a single family residence.  She testified that five other family members also lived in the home, including her thirty-four year-old nephew, Appellant, who resided in the back bedroom on the second floor.  In addition to the permanent residents, about ten[ to ]twelve of Ms. Tolbert's grandchildren stayed at the residence on the weekends, including her grandson T.T., the complainant.  When the children were there, they would mostly spend their time playing in the "play room" located in the front room on the second floor and, according to Ms. Tolbert, they would generally sleep in that area as well.
>
> Complainant, T.T., who is currently nineteen years old, testified that he stayed at his grandmother's house every weekend

during the years of 2011 and 2012. T.T. further testified that sometime in 2011, when he was fourteen years old, Appellant called him into his bedroom and asked him whether he wanted to watch "porn" and put on a DVD showing naked men and woman having sex. While they were watching the DVD, Appellant and T.T. both exposed their penises. T.T. testified that Appellant bent him over and put his penis into his anus. Appellant also asked to perform oral sex on T.T., and then Appellant put T.T.'s penis into his mouth and put his penis into T.T.'s mouth.

T.T.'s grandmother, Ms. Tolbert, testified that she did not know about these incidents until T.T. confided in her in late January of 2013. Ms. Tolbert testified that T.T. woke her up one night, about three in the morning, and told her, "[Appellant] had sex with me," followed by "a lot of times." When Ms. Tolbert asked T.T. what he meant by that statement, he told her that Appellant "pulled [his] pants down and went inside of [him]," and that Appellant asked whether he wanted to have oral sex, but he had said "no." Upon hearing this, Ms. Tolbert tried to call T.T.'s mother to notify her about the situation, but T.T. begged her not to say anything because he was "scared" and promised that he would tell her himself within the next week.

T.T.'s mother, Ms. Karima Tolbert testified that T.T. suffers from an intellectual disability and that, as a result of his disability, he requires special education and sometimes experiences difficulty communicating and understanding everyday problems. T.T. informed her about the incidents on January 30, 2013, while they were at his doctor's appointment at Children's Hospital of Philadelphia (CHOP) for a routine annual physical exam. Karima testified that while they were waiting in the examination room, T.T. told her he had wanted to get an HIV test because "Me and Marky had sex." When she asked him, "[s]ex like what, sex like you entered him or he entered you?" T.T. responded, "yeah. . . [h]e did it to me." Karima immediately left the examination room, called her mother, and took T.T. home without completing the examination. After Karima contacted the police, she, T.T., and Linda Tolbert went to the Special Victim's Unit to file a police report. Subsequently, on February 13, 2013, Karima and T.T. returned to CHOP to complete the examination and get an HIV test.

Philadelphia Police Officer Gregory Meissler, a fourteen year veteran of the Philadelphia Police Department, Special Victim's

Unit, testified that as part of his investigation, he interviewed T.T. and Karima separately, taking individual statements from each of them. Based on these interviews, Officer Meissler obtained an affidavit of probable cause in support of an arrest warrant for Appellant, which was subsequently issued.

Complainant's twin brother, M.T., testified that after his family returned from the Special Victims Unit on January 30, 2013, T.T. told him, for the first time, that he had sex with Appellant on two prior occasions. M.T. also testified that there were times when Appellant and T.T. spent time alone together at his grandmother's house.

Trial Court Opinion, 8/4/15, at 5-7 (cleaned up).

Appellant was charged with multiple sexual offenses, and on April 25, 2014, was convicted by a jury of unlawful contact with a minor and corrupting morals of a minor. He was found not guilty of involuntary deviate sexual intercourse ("IDSI"). Prior to sentencing, trial counsel presented an oral motion for extraordinary relief. *See* N.T. Sentencing Hearing, 8/7/14, at 10-16. In the motion, counsel challenged the grading of Appellant's conviction for unlawful contact with a minor as a first-degree felony, due to the IDSI acquittal. The trial court denied Appellant's motion and proceeded directly to sentencing, imposing an aggregate sentence of seven to fifteen years of imprisonment. In fashioning its sentence, the trial court graded the unlawful contact with a minor as a first-degree felony and imposed a sentence of six to twelve years of incarceration. The court further imposed a consecutive one-to-three-year sentence for the corruption-of-a-minor conviction. Appellant timely filed a post-sentence motion, renewing his argument that his conviction

for unlawful contact with a minor should be graded as third-degree felony. The trial court denied Appellant's motion, and he filed a direct appeal.

Although Appellant initially raised seven issues in his Pa.R.A.P. 1925(b) statement, he only pursued one issue on appeal challenging the grading of his unlawful contact conviction at sentencing. In a published opinion, we rejected Appellant's allegation of error. *See Commonwealth v. Aikens*, 139 A.3d 244 (Pa.Super. 2016). Our Supreme Court agreed. After finding that the jury instruction properly required the jury to find that Appellant contacted the victim for the purpose of engaging in IDSI before it could return a guilty verdict for unlawful contact with a minor, our Supreme Court affirmed Appellant's judgment of sentence. *See Commonwealth v. Aikens*, 168 A.3d 137 (Pa. 2017).

Appellant filed a timely *pro se* PCRA petition, in which he again asserted that his sentence was illegal due to the improper grading of his unlawful contact conviction. Appellant also argued that trial counsel was ineffective for failing to object when the prosecutor asked leading questions of the victim and when the court delivered confusing instructions regarding the elements of the charges to the jury. On February 14, 2018, appointed counsel filed a *Turner*/*Finley*[1] letter and a motion to withdraw, asserting that after reviewing the record, Appellant had no grounds for achieving post-conviction relief. The PCRA court agreed with counsel's assessment and issued a

_____

[1] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

Pa.R.Crim.P. 907 notice of its intent to dismiss, in which it granted counsel's request to withdraw. Appellant filed a *pro se* response, listing eleven claims of error that he wanted PCRA counsel to pursue. After reviewing Appellant's response, the PCRA court dismissed Appellant's petition as meritless. Appellant filed a timely notice of appeal and a *nunc pro tunc* Pa.R.A.P. 1925(b) concise statement.[2] On October 18, 2019, the PCRA court issued its Pa.R.A.P. 1925(a) opinion.

Appellant raises the following issues for our review:

A. Was Appellant's PCRA counsel ineffective for failure to layer an [ineffective assistance of counsel ("IAC")] claim against direct appeal counsel for failure to raise an IAC claim against trial counsel for failure to challenge the trial court's error allowing prosecutor to lead [a] witness on the stand while testifying, even after [the] judge admonished [the] prosecutor warning that if he should continue the judge would order charges dismissed; and where after such continued conduct, the judge allowed and issued no cautionary instruction, and trial counsel neglected to object thereto?

B. Was Appellant's PCRA counsel ineffective for failure to raise and preserve issues in the original 1925(b) statement filed post-trial by direct appeal counsel – i.e., "that the jury's acquittal of Appellant on the charge of IDSI is inconsistent with its guilty verdict on unlawful contact with a minor";

---

[2] Due to a breakdown in the prison communications system, the PCRA court did not initially receive Appellant's Pa.R.A.P. 1925(b) statement and Appellant did not receive notice of the appellate briefing schedule. As a consequence, the PCRA court filed its Pa.R.A.P. 1925(a) opinion finding all of Appellant's issues waived and we dismissed his appeal for failure to file a brief. After this was uncovered, Appellant filed an application to reinstate his appeal. We granted Appellant's request and remanded the case so that Appellant could file a *nunc pro tunc* 1925(b) statement and the PCRA court could issue a corresponding 1925(a) opinion.

where there cannot be an inconsistent verdict when acquitted of an underlying or predicate crime of the second charge?

C. Was Appellant's PCRA counsel ineffective for failure to rise a layered claim of IAC on direct appeal counsel for failure to raise IAC claim on trial counsel for failure to challenge whether the evidence at trial was sufficient as a matter of law to convict Appellant of IDSI?

D. Was Appellant's PCRA counsel ineffective for failure to layer an IAC claim against direct appeal counsel for failure to raise an IAC claim against trial counsel for failure to challenge and raise the claim of whether the verdict was against the weight of the evidence?

Appellant's brief at 2.

We begin with a discussion of the pertinent legal principles. Our "review is limited to the findings of the PCRA court and the evidence of record," and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." ***Commonwealth v. Rykard***, 55 A.3d 1177, 1183 (Pa.Super. 2012). Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." ***Id***. "[W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary." ***Id***.

Appellant alleges layered claims of trial counsel ineffectiveness. In reviewing IAC claims, counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. ***See Commonwealth v. Becker***, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, a petitioner must

plead and prove that: (1) the legal claim underlying his ineffectiveness claim has arguable merit; (2) counsel's decision to act (or not) lacked a reasonable basis designed to effectuate the petitioner's interests; and (3) prejudice resulted. *Id*. The failure to establish any of the three prongs is fatal to the claim. *Id*. at 113.

Where a petitioner asserts a layered IAC claim he must argue each prong of the three-prong ineffectiveness test for each separate attorney. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011). As we have explained:

> Layered claims of ineffectiveness are not wholly distinct from the underlying claims, because proof of the underlying claim is an essential element of the derivative ineffectiveness claim . . . . In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue.

*Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa.Super. 2012) (citations and quotations omitted).

In Appellant's first layered IAC claim, Appellant attacks all three of his prior counsel's effectiveness after trial counsel failed to object when the prosecutor asked leading questions of the victim, and appellate and PCRA counsel did not litigate this issue. *See* Appellant's brief at 7-10. The PCRA court disagreed with Appellant's recounting of the record and found Appellant's claim meritless. *See* PCRA Opinion, 10/18/19, at 9.

In its opinion, the PCRA court explained its reasoning as follows:

[Appellant] misstates the record. In its brief examination of the complaining witness, who was [fourteen] years old at the time he was assaulted by [Appellant], trial counsel objected to the Commonwealth's asking leading questions. (N.T., 4/23/14 pgs. 103, 104) In sustaining trial counsel's objections, the [c]ourt instructed the jury as to the meaning of leading questions, concluding: "Leading questions aren't a terrible thing, but they you should by [sic] avoided because in the end, you're not listening to the witness testify. You're listening to the lawyer testify." (N.T., 4/23/14 pgs. 104-105) The [c]ourt again, on its own initiative had to admonish counsel for the Commonwealth to refrain for asking leading questions. (N.T., 4/23/14 pgs. 107-109)

Due to the delicate nature of the charges against [Appellant] and the age of the complainant at the time of the offense, it was clear that the complainant was a reluctant witness. (N.T., 4/23/14 pgs. 106, 107, 110) In light of this, the [c]ourt viewed counsel for the Commonwealth['s] questions as an attempt to aid the complainant in relating his account of the assault; not a deliberate attempt to elicit testimony that he could not otherwise introduce. Had trial counsel sought sanctions against the Commonwealth, the [c]ourt would have denied such a request.

*Id*.

We discern no abuse of discretion in the PCRA court's conclusion, as our own review of the record supports it. Trial counsel objected when the Commonwealth asked leading questions of the victim. *See* N.T. Jury Trial, 4/23/14, at 104-05. The trial court sustained trial counsel's objection. When the prosecutor asked another leading question, the trial court criticized the prosecutor in front of the jury and on the same grounds. *Id*. at 107-109. Therefore, the PCRA court did not err when it concluded that Appellant's allegation was meritless. Accordingly, appellate counsel and PCRA counsel were not ineffective for failing to litigate this issue.

Appellant's second and fourth claims implicate appellate counsel's decision to pursue only one of the seven claims that were initially raised in the concise statement on appeal, and PCRA counsel's failure to litigate this issue. **See** Appellant's brief at 11-14, 19-21. The PCRA court disagreed, finding that Appellant's complaints were undeveloped and meritless. **See** Trial Court Opinion, 10/18/19, at 5. We agree with the PCRA court's assessment.

In his analysis section of both argument sections, Appellant simply states that he is entitled to relief because counsel abandoned some of the issues on appeal that were, in his opinion, arguably meritorious. This deficient analysis does not meet the pleading requirements of the test for ineffective assistance of counsel. As previously explained, a sufficient analysis does not stop at arguable merit, but also responds to whether appellate counsel had a reasonable basis for his inaction and explains how appellate counsel's actions prejudiced Appellant to an extent that relief is warranted. Importantly, "[c]laims involving appellate counsel ineffectiveness . . . involve concerns unique to appellate practice. Arguably meritorious claims may be omitted in favor of pursuing claims which in the exercise of appellate counsel's objectively reasonable professional judgment, offer a greater prospect of securing relief." **Commonwealth v. Lambert**, 797 A.2d 232, 244 (Pa. 2001).

We agree with the PCRA court's conclusion that Appellant's arguments attacking appellate counsel's ineffectiveness were insufficiently developed.

Accordingly, Appellant's layered ineffective assistance of counsel claim, arguing that PCRA counsel was ineffective on the same grounds, also fails.[3] *See*, *e.g.*, *Commonwealth v. Lopez*, 854 A.2d 465, 469 (Pa. 2004) (deeming ineffective assistance of counsel claims waived where the petitioner failed to develop, through a discussion of the reasonable basis and prejudice prongs, how appellate counsel rendered ineffective assistance of counsel in failing to advance claims of trial counsel ineffectiveness).

In Appellant's remaining layered allegation of counsel ineffectiveness, he argues that trial counsel was ineffective for failing to ensure that his unlawful contact with a minor conviction was graded as a third degree felony, due to his IDSI acquittal.[4] *See* Appellant's brief at 16-18. The Commonwealth asserts that appellant's claim was previously litigated, since he challenged the grading of the unlawful contact of a minor conviction on direct appeal and our

_____

[3] The Commonwealth asserts that these claims are waived because they were not included in Appellant's *pro se* PCRA petition. *See* Commonwealth's brief at 14. This is true. However, because Appellant raised this issue as a layered claim of PCRA counsel ineffectiveness in his response to the Rule 907 notice, and the PCRA court had the opportunity to review it, we decline to find waiver on this basis. *See Pro Se* Objection to Rule 907 Intent to Dismiss, 5/18/18; *see also Commonwealth v. Rigg*, 84 A.3d 1080, 1084-85 (Pa.Super. 2014) (explaining that a petitioner must request leave to amend his petition before raising new claims of trial or appellate counsel ineffectiveness in a Rule 907 response, but not before raising new claims of PCRA counsel ineffectiveness).

[4] While Appellant frames this issue as a sufficiency claim in his statement of questions involved, the substance of his argument attacks the grading of the unlawful contact charge due to the IDSI acquittal. *See* Appellant's brief at 2, 15.

Supreme Court has already spoken on this issue. *See* Commonwealth's brief at 16-17; *see also* 42 Pa.C.S. § 9543(a)(3). The PCRA court accepted this argument below, but we will review Appellant's claim within the context of the layered ineffective assistance context, since this is his first opportunity to challenge counsel's stewardship. *See Aikens*, *supra*.

We find that the record supports the PCRA court's denial of this claim. Immediately prior to sentencing, trial counsel presented an oral motion for extraordinary relief. *See* N.T. Sentencing Hearing, 8/7/14, at 10-16. Among trial counsel's arguments was a challenge to the grading of his conviction for unlawful contact with a minor as a first-degree felony, due to his acquittal for IDSI. *Id*. The trial court denied Appellant's motion and proceeded to sentencing. In his post-sentence motion, trial counsel renewed this argument, which again the trial court denied. Therefore, because the record reflects that trial counsel did challenge the grading of the unlawful contact of a minor conviction, albeit unsuccessfully, this allegation is meritless and the PCRA court did not err when it denied Appellant's claim. Accordingly, Appellant's layered claims against appellate and PCRA counsel also fail.

Appellant has not convinced us that any of his issues provide grounds for relief. Therefore, we find that the PCRA court did not abuse its discretion when it denied Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/24/20