J-S48031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL R. TACKETT | |
| Appellant | No. 188 WDA 2015 |

Appeal from the PCRA Order of January 20, 2015
In the Court of Common Pleas of Crawford County
Criminal Division at No.: CP-20-CR-0000571-2010

BEFORE:  PANELLA, J., DONOHUE, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:               **FILED SEPTEMBER 22, 2015**

Michael Tackett appeals the January 20, 2015 order dismissing his timely petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46, without an evidentiary hearing.  Herein, Tackett raises three claims of ineffective assistance of counsel and alleges that the PCRA court erred by dismissing his petition without an evidentiary hearing. Finding no actionable merit to any of these claims, we affirm.

On May 19, 2010, Tackett was charged with two counts of rape, two counts of involuntary deviate sexual intercourse ("IDSI"), two counts of sexual assault, one count of terroristic threats, and one count of simple assault.[1]  The charges stemmed from Tackett's physical and sexual assault

---

[1]    18 Pa.C.S. §§ 3121(a)(1); 3123(a)(1); 3124.1; 2706(a)(1), and 2701(a)(1), respectively.

of T.L., a real estate agent, on May 24, 2007. Prior to trial, the Commonwealth filed a motion *in limine*, in which the Commonwealth sought permission from the trial court to introduce prior bad acts testimony pursuant to Pa.R.E. 404(b) regarding Tackett's prior rape of C.F., another real estate agent, under similar circumstances and Tackett's attempts to commit the same on real estate agents R.B. and A.T. The Commonwealth sought to introduce this evidence to demonstrate Tackett's common scheme, plan, design, and/or identity. The trial court granted the motion.

Counsel for Tackett also filed a pre-trial motion *in limine*, in which counsel requested that the trial court dismiss the simple assault charge. Because the crime occurred on May 24, 2007, counsel contended that the statute of limitations had expired for that crime. The trial court agreed, and dismissed the simple assault count.

Tackett elected to be tried by a jury. The trial commenced on March 21, 2011 and ended on March 24, 2011 with Tackett being convicted of all of the remaining charges. The evidence presented at trial fairly can be summarized as follows.

On May 16, 2007, T.L. received a call from a potential buyer requesting to view a property that she had listed for sale. Although the caller identified himself as Randy Thompson, it actually was Tackett making the phone call. They agreed to meet at the property on March 24, 2007. On that day, Tackett arrived at the property in a blue Mercury Mountaineer. T.L. showed Tackett around the outside of the property first, and then the

inside of the property. T.L. noticed that Tackett would not touch anything inside of the home. After a thorough walkthrough of the interior of the property, T.L. and Tackett went back outside. While outside, Tackett smoked a cigarette and then placed the butt of the cigarette into his pocket.

T.L. then began packing up her computer and materials because she had to attend a closing on another property. Before she could leave, Tackett asked T.L. if he could take one last look around the interior of the property. They went back inside and walked around the main portion of the residence until Tackett asked to look at the basement. When they got to the bottom of the stairs, Tackett focused his attention on a hole in the wall of a storage room, which concerned him. T.L. believed that it may be for a sump pump, and decided to enter the storage room to take another, closer, look. When she bent down to examine the hole, she felt something stun her abdomen. She then felt Tackett on top of her. He was holding a stun gun, and proceeded to stun her a second time.

T.L. tried to bite Tackett's hand, but was met with another shot from the stun gun. Tackett then grabbed T.L. by the hair, placed his other arm around her waist, and dragged her to a carpeted area of the basement. T.L. begged him not to continue with the attack, but Tackett responded by threatening to kill her and her children if she did not cooperate.

In the carpeted room, Tackett stunned her again, causing her to drop to her knees. Tackett pulled the neck portion of T.L.'s shirt down and fondled her breasts. He then took his penis out of his pants and instructed

T.L. to perform oral sex on him. Tackett told her that he knew where she lived and that, if she did not perform oral sex on him or if she tried to bite his penis, he would kill her children. Tackett inserted his penis into her mouth. While holding onto her ponytail, Tackett forced T.L.'s head back and forth over his penis. T.L. noted that Tackett's pubic region either had been trimmed or shaved completely.

T.L. continued to beg Tackett to end the assault. Instead, Tackett demanded that T.L. remove her pants. T.L. told Tackett that she was menstruating and that she suffered from hemorrhaging due to child birth. Tackett told her that if he could not have intercourse with her vaginally, that he would do it another way. Tackett then flipped T.L. over, slammed her down on her stomach, and crawled on top of her. At some point, Tackett had placed a condom over his penis. He then forced his penis into her anus. As he did so, Tackett talked about how he still intended to purchase the home. In an effort to keep him calm, T.L. responded to his discussion about the home, and talked about the quality of the surrounding neighborhood.

When he had completed his assault, Tackett stood up and instructed T.L. to get dressed. However, Tackett then panicked because he could not find another condom that he had brought with him. He grabbed T.L. by the hair and dragged her back into the storage room. He held her by her hair while he searched for the condom. Once he found it, he put it in his pocket and told her that it was time to leave.

T.L. called her husband and told him that she had been attacked. She met her husband and showed him the burn marks from the stun gun on her stomach. She did not tell him that she was sexually assaulted. T.L. insisted that they not call the police because she was afraid that, if she did, Tackett would kill her children. However, after some discussions, her husband convinced her to contact law enforcement. She then went to the Pennsylvania State Police barracks, where she met Trooper Kurt Sitler. She told the trooper that she was physically assaulted with a stun gun and that she and her children were threatened. She also gave a description of Tackett and his vehicle. However, T.L. told the trooper that she did not know if she was sexually assaulted. She told him only that Tackett had exposed his penis to her, which caused her to elbow him and run away.

Trooper Sitler drove T.L. to a local hospital where T.L. met with nurse Sarah Mattocks. Even though T.L. did not admit at that time that she had been sexually assaulted as well, the nurse performed a rape kit examination on T.L. Mattocks did not observe any bleeding or tearing in or around T.L.'s anus. Additionally, Mattocks did not detect any trauma on T.L.'s vagina. Neither the police nor the medical personnel who treated T.L. located any biological evidence, including DNA, that was attributable to anyone other than T.L. or her husband. Thereafter, T.L. was released from the hospital and sent home to recover from her injuries.

Two or three weeks after the assault, T.L. told her husband that she had been sexually assaulted in addition to the physical assault. She did not inform Trooper Sitler at that time that she had been sexually assaulted.

Approximately two years later, in 2009, T.L. learned via a warning from her real estate company that another person had been sexually assaulted in Mercer County under circumstances very similar to those from which she had suffered. Shortly after the Mercer County incident, Trooper Sitler reinitiated contact with T.L. and asked her to come to the barracks to view suspects in a photo array. She was able to identify Tackett from that array. T.L. then began to cry and told Trooper Sitler that she had been sexually assaulted by Tackett.

Trooper Todd Gilberto was working at the police barracks on the day of the assault. At approximately 3:13 p.m., he received a call from T.L. She told him that a man named Randy Thompson had assaulted her with a stun gun. She told him that she was not raped or sexually assaulted. However, she told Trooper Gilberto, as she did initially with Trooper Sitler, that her assailant had exposed his penis, and that she elbowed him and ran away.

A.T. is a real estate agent in Ohio. On November 23, 2008, she showed a man who identified himself as Randall Thompson a property in Boardman, Ohio. Thompson, who actually was Tackett, requested a second viewing of the home a few days later. However, A.T. took a second agent, L.E., with her because she was uncomfortable being alone with Tackett.

Tackett was visibly annoyed and frustrated with the presence of L.E. Thereafter, A.T. would not show Tackett any other properties.

R.B. is also a real estate agent. Tackett, who used the name Randy Mitchell, requested an appointment with R.B. to view two of the properties that she had listed for sale. On February 12, 2009, R.B. met Tackett at one of the properties at 9:00 a.m. Shortly thereafter, R.B.'s husband also showed up to the viewing. Tackett immediately became agitated. Tackett viewed the property, but then asked if R.B.'s husband was going to accompany them to the second viewing. The question and the interaction with Tackett made R.B. very uncomfortable.

C.F., a real estate agent as well, met Tackett at an open house in May 2009. Once again, Tackett used an alias. This time it was Randy Michaels. C.F. showed Tackett a residence in Mercer County on June 11, 2009. During that showing, Tackett raped C.F. and threatened to kill her and her family if she told anyone. Tackett also stole her credit cards. Tackett was convicted in Mercer County of rape and related offenses for his attack on C.F.

Tackett testified in his own defense. He admitted that he pleaded guilty to the sexual attack on C.F. However, he insisted that he did not rape or otherwise sexually assault T.L. Tackett stated that he suffered from a prescription pill addiction, and that he lured real estate agents into showing him properties with the intent to steal from them. He confessed to using the stun gun on T.L. in an attempt to rob her. However, she elbowed him in the

groin and fled the residence. No sexual assault occurred, according to Tackett.

At the conclusion of trial, as noted earlier, the jury convicted Tackett of all of the charged offenses. On August 2, 2011, the trial court sentenced Tackett to an aggregate term of incarceration of twenty and one-half to forty-five years. Tackett filed a direct appeal to this Court. A panel of this Court concluded that, because Tackett's brief failed in numerous substantive ways to conform to our rules of procedure, Tackett had waived all of his issues. Nonetheless, despite finding waiver, the panel briefly reviewed the merits of those issues and concluded that, even if Tackett's brief was compliant, he would not be entitled to relief. *See Commonwealth v. Tackett*, No. 1789 WDA 2011, slip op. at 5-9 (Pa. Super. June 11, 2012). Tackett then filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on July 2, 2013.

On July 24, 2014, Tackett filed a timely *pro se* PCRA petition. The PCRA court appointed counsel to represent Tackett during the PCRA proceedings. On October 8, 2014, counsel filed an amended PCRA petition on Tackett's behalf. The PCRA court held a hearing for the purposes of argument only. On December 1, 2014, the PCRA court issued an opinion addressing the merits of Tackett's PCRA petition, and concluding that Tackett is not entitled to relief. In addition to the opinion, the court issued notice of its intent to dismiss the petition without a full evidentiary hearing pursuant

to Pa.R.Crim.P. 907. On January 20, 2015, the PCRA court formally dismissed Tackett's petition.

On January 26, 2015, Tackett filed a notice of appeal. On the same date, Tackett filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), even though he was not ordered to do so. On January 28, 2015, the PCRA court issued a statement pursuant to Pa.R.A.P. 1925(a) directing this Court to the analysis set forth by the PCRA court in its December 1, 2014 opinion.

Tackett raises two overarching questions for our review:

1. Whether the PCRA court erred in determining that [Tackett's] counsel was not ineffective?

2. Whether the PCRA court erred in not having an evidentiary hearing to address the issues raised in [Tackett's] amended petition for post-conviction collateral relief?

Brief for Tackett at 7. In his brief, Tackett expands his first issue to include three specific claims of ineffective assistance of counsel, each of which was raised and preserved in the proceedings below. Those claims are as follows:

1. Whether trial counsel was ineffective for filing a pre-trial motion to dismiss the simple assault charge?

2. Whether trial counsel was ineffective for failing to call Tackett's wife as a witness at trial?

3. Whether appellate counsel was ineffective for filing a substantially non-compliant appellate brief?

Brief for Tackett at 27-32.

The governing legal standards attendant to our review in the PCRA context are well-defined: "[A]n appellate court reviews the PCRA court's findings of fact to determine if they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (citing ***Commonwealth v. Colavita***, 993 A.2d 874, 887 (Pa. 2010)). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." ***Id.*** (citing ***Commonwealth v. Sam***, 952 A.2d 565, 573 (Pa. 2008)). Furthermore, the PCRA court's credibility determinations, when supported by the record, are binding upon this Court. ***Commonwealth v. Johnson***, 966 A.2d 523, 532, 539 (Pa. 2009). We apply a *de novo* standard of review with regard to the PCRA court's legal conclusions. ***Commonwealth v. Rios***, 920 A.2d 790, 810 (Pa. 2007).

Three of Tackett's claims allege ineffective assistance of counsel ("IAC"). Our standard of review in this context is well-defined:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." ***Colavita***, 993 A.2d at 886 (citing ***Strickland v. Washington***, 466 U.S. 668, 690 (1984)). In Pennsylvania, we have refined the ***Strickland*** performance and

> prejudice test into a three-part inquiry. *See Commonwealth v. Pierce*, 527 A.2d 973, 975-77 (Pa. 1987). Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. *Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." *Commonwealth v. Simpson*, 66 A.3d 253, 260 (Pa. 2013).

*Spotz*, 84 A.3d at 311 (internal citations modified). We need not analyze "the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the [*Pierce*] test, the court may proceed to that element first." *Commonwealth v. Lambert*, 797 A.2d 232, 243 n.9 (Pa. 2001). Furthermore, "counsel will not be considered ineffective for failing to pursue meritless claims." *Commonwealth v. Pursell*, 724 A.2d 293, 304 (Pa. 1999) (citing *Commonwealth v. Parker*, 469 A.2d 582, 584 (Pa. 1983)).

In his first issue, Tackett contends that trial counsel was ineffective by filing a motion *in limine* seeking to have the simple assault charge dismissed based upon the statute of limitations. Tackett admits that he asked counsel to file the motion, *see* Brief for Tackett at 27, but maintains that counsel should not have acquiesced to his request. Tackett admitted at trial that he physically assaulted T.L. However, he denied that he sexually assaulted her. Thus, according to Tackett, the jury only convicted him of the sexually-related charges because they had no other options. In other words, Tackett argues that the jury was unable to convict him of simple assault, and the

absence of that charge on the verdict slip "swayed" the jurors into finding him guilty of the sexually-related charges. *Id.*

Tackett's argument fails for a number of reasons. First, even if we ignore the fact that Tackett specifically requested that counsel file the motion, Tackett has not established all three elements of the governing test. Although Tackett sets forth all of the governing principles of the test, *see id.* at 25, he only pays lip service to each prong in his actual argument. *Id.* at 28. Tackett does not discuss each prong individually. Rather, he merely parrots the three prongs in three brief lines of text. It is unclear whether the remainder of his argument is directed at the arguable merit prong or the prejudice prong. He gives the reasonable basis prong no substantive attention.

Moreover, there is nothing in the record to substantiate his version of the jury's deliberations. We observe nothing in the record, other than Tackett's belief that the jury was poised to reject T.L.'s testimony as incredible, that would support his claim that the jury only convicted him of the sexually-related offenses because they had no option to convict him only of assault. To the contrary, T.L. testified at length, and in great detail, about the violent sexual abuse that Tackett perpetrated on her in the basement of that house. The jury was entitled to credit that testimony, and it appears that they did. The record offers no support to Tackett's spurious argument that the jury would have acquitted him of those charges if only

they had other charges to fall back on relating only to the physical attack. This claim lacks arguable merit entirely.

In his second claim, Tackett argues that trial counsel was ineffective for failing to call his wife as a witness at trial. T.L. testified that, when Tackett exposed his penis, she noticed that he either had no pubic hair or that the hair was extensively groomed. Tackett argues that his wife would have testified that, during the entire year of 2007, she never observed Tackett's pubic area without hair.

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the **Strickland** test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. **Johnson**, 966 A.2d at 536; **Commonwealth v. Clark**, 961 A.2d 80, 90 (Pa. 2008). To demonstrate **Strickland** prejudice, a petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." **Commonwealth v. Gibson**, 951 A.2d 1110, 1134 (Pa. 2008). Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness' testimony would have been helpful to the defense. **Commonwealth v. Auker**, 681 A.2d 1305, 1319 (Pa. 1996). "A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy." **Id.**

**Commonwealth v. Sneed**, 45 A.3d 1096, 1108-09 (Pa. 2012).

Tackett does not address the first four elements of this test. However, even if we assume that, because the witness was his wife, that she was willing to testify and that counsel knew that she existed, Tackett cannot

- 13 -

show that the absence of her testimony would have altered the outcome of the case.

Tackett relies upon T.L.'s initial failure to tell her husband, the medical personnel, or the troopers that she was sexually assaulted. Tackett argues that these facts significantly impaired her credibility before the jury, and that, had the jurors known that he kept a full pubis of hair in 2007, T.L.'s credibility would have been further damaged, and the jury likely would have acquitted him. We disagree.

The evidence at trial demonstrated unequivocally that Tackett is a serial rapist with a very clear *modus operandi*. Tackett lured female real estate agents into secluded and private for-sale residences with the intent to rape them therein. Tackett's meticulous refusal to touch anything within the home, and his diligent efforts to ensure that nothing that he brought to the home was left there (including condoms and cigarette butts), highlights the fact that he went to these homes with the exclusive intent to physically and sexually assault these unsuspecting women. T.L. testified extensively about the various steps that he took to get her into the basement and to remove any evidence that could link him to the crime.

T.L. testified that he used a stun gun to force her to her knees. He then forced her to perform fellatio on him. Tackett continued the assault by pushing her on her stomach and anally raping her. He then dragged her around the basement by her ponytail looking for a misplaced condom.

Tackett takes issue with none of this evidence. Rather, he focuses only upon the fact that T.L. did not report the sexual aspect of the assault promptly. Tackett conspicuously ignores the fact that Tackett repeatedly threatened to kill her and her children if she told anyone. She was so terrified after the assault that he would come back and kill her or her children that she elected not to tell anyone, including her own husband about the sexual assault. T.L. told the jury that his own threats were why she was afraid to tell the entire truth. The jury was free to believe this evidence.

Consequently, even if we assume, *arguendo*, that T.L. was mistaken about the amount of pubic hair surrounding Tackett's penis, Tackett cannot demonstrate that the absence of his wife's testimony was prejudicial. T.L.'s testimony, especially when considered in conjunction with the testimony regarding his other rape and similar attempts, was overwhelming, and her observation about Tackett's pubic hair was a minor, if not insignificant, part of her testimony. Testimony proving otherwise would not have altered the outcome of the trial, particularly because the lack of a prompt complaint was directly due to his threats. Unable to demonstrate prejudice, this claim necessarily fails.

In his third issue, Tackett argues that his appellate counsel was ineffective for failing to file a brief that complied substantially with our briefing rules. We may dispose of this issue quickly. It is true that, on

direct appeal, a panel of this Court concluded that Tackett had waived each of his issues because Tackett's brief clearly was non-compliant. However, the panel proceeded to discuss each issue and declare each to be without merit. Presently, Tackett maintains that counsel was ineffective in failing to file a compliant brief, but, in doing so, entirely fails to discuss the issues that he raised in that brief, the merits of each, and how a compliant brief would have altered the outcome of the appeal. Indeed, Tackett does not demonstrate, or even attempt to demonstrate, that he would have been successful in any of the issues that he raised on appeal. Failing to do so, Tackett has not demonstrated that his claim has arguable merit or that he was prejudiced by counsel's failures.

Finally, Tackett argues that the PCRA court erred by not holding a full evidentiary hearing. A PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied "that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by any further proceedings." Pa.R.Crim.P. 909(B)(2). "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. D'Amato*, 856 A.2d 806, 820 (Pa. 2004). For the reasons set forth above, we discern no

genuine issues of material fact that would warrant an evidentiary hearing. Moreover, it is clear that Tackett is not entitled to PCRA relief, and that a hearing would not serve any legitimate purpose. Tackett's final issue fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2015