J-S61025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DANIEL T. HARRIS | |
| Appellee | No. 863 MDA 2015 |

Appeal from the Order Entered on May 11, 2015
In the Court of Common Pleas of Lebanon County
Criminal Division at No.: CP-38-CR-0000707-2009

BEFORE: PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED OCTOBER 15, 2015**

The Commonwealth of Pennsylvania appeals the May 11, 2015 order granting Daniel Harris' petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. We affirm.

The PCRA court has summarized the factual and initial procedural history of this case as follows:

> Following a jury trial on December 11, 2009, Daniel Harris [] was found guilty of theft, criminal conspiracy to commit theft, criminal attempt to commit theft, and criminal mischief. All charges stem from incidents that occurred overnight on November 14, 2008 at Adams Auto Sales. On that date, one vehicle[, a Saturn,] was stolen from the car lot and twelve were entered into and damaged. Shauna Adams, one of the owners of Adams Auto Sales, outlined all of the damages in her testimony at trial. These damages totaled $55,404.08. Adams Auto Sales provided security camera footage of the occurrence

___

[*] Retired Senior Judge assigned to the Superior Court.

to police, but Adams testified that the video was not clear enough to identify the individuals involved. The video did, however, show four separate individuals present at Adams Auto Sales on the night of the incident.

The Commonwealth's key evidence against [Harris] was the testimony of his co-defendants, James Jeter (hereafter "Jeter") and Jeffrey Zombro, Jr. (hereafter "Zombro"). Before trial, Jeter and Zombro spoke with police regarding the November 14, 2008 incident. On December 30, 2008, Zombro was questioned by police. During the interview, he admitted that he, Jeter, [Steven] Santiago, and Michael Ratcliff were the individuals that went to Adams Auto Sales and broke into cars. He made no mention of [Harris'] involvement. Zombro prepared a written statement that same day memorializing this information.

Zombro was interviewed again on January 9, 2009 by police in the presence of his mother, Lynda Reigle. Zombro again explained that four individuals participated in the Adams Auto Sales incident on November 14, 1008 – Zombro, Jeter, Steven "Saint" Santiago, and "a guy named 'Crunch.'" He testified at trial that [Harris] is not known as "Saint" or "Crunch." He explained that it was possible that [Harris] was with them at Adams Auto Sales, but he "thought he was locked up" at the time of the incident and that he was "pretty sure" that "Crunch" was with them. At that time, Zombro denied any knowledge of the stolen Saturn, and claimed that he traveled to New York City on November 15, 2008 with Jeter and Santiago when they were stopped in Jeter's Geo Metro.

Jeter was interviewed by police on January 16, 2009 in the presence of his mother, Dusown Jeter. Contrary to Zombro's explanation of the incident, Jeter explained that there were only three individuals at Adams Auto Sales that night – Jeter, Zombro, and [Harris]. Jeter also explained that he, Zombro, and Santiago drove the stolen Saturn to New York City.

Zombro was interviewed again by police on January 16, 2009, where his story changed. During that meeting, he initially explained that it was he, Jeter, Santiago, and "Crunch" who were present at Adams Auto Sales. After the detective informed him that "Crunch" was not in town at the time of the incident, he claimed that there were three individuals at Adams Auto Sales that night – Jeter, Zombro, and [Harris]. He explained that he,

Jeter, and Santiago then drove the stolen vehicle to New York City.

At trial, both Zombro and Jeter testified that three individuals participated: Zombro, Jeter, and [Harris]. When asked why their stories to the police changed, Zombro and Jeter explained that they changed their stories after speaking with their parents because telling the truth would be better for them in the long run.

Trooper James Linn also testified at trial. Trooper Lin explained that he was unable to obtain fingerprints from the vehicles because it had rained overnight. During his interview of [Harris], he informed [Harris] that two other individuals provided written statements explaining that he was involved in the November 14, 2008 incident. When asked if he knew who these individuals were, [Harris] responded, "Jeffrey Zombro and James Jeter."

Prior to trial, the Adams Auto Sales surveillance video was provided to trial counsel. At no point did trial counsel show the video tape depicting four individuals to the jury. The video would have contradicted the trial testimony of Zombro and Jeter that only three people were present at Adams Auto Sales. As per protocol, the police station's copy of the surveillance video was destroyed after [Harris'] appeal was denied.

As a result of this evidence, a jury found [Harris] guilty on all four counts. With respect to [the criminal mischief count,] the jury found that the total damages suffered by the victim in this offense exceeded $5,000. [Harris] was called for sentencing on February 17, 2010.

[The trial court sentenced Harris to an aggregate term of three to seven years' incarceration.] Further, [the court] determined that [Harris] should be eligible for the RRRI program and imposed an RRRI minimum of 27 months.

[Harris] filed post-sentence motions on February 25, 2010, which [the trial court] denied on May 4, 2010 due to trial counsel's failure to file a brief. [Harris] filed a timely appeal to [this Court] on June 2, 2010, which was similarly dismissed on October 29, 2010 when trial counsel failed to file a brief. [Harris] filed a [PCRA] petition on March 15, 2013, alleging that he received ineffective assistance of counsel. More specifically, [Harris] alleged that trial counsel failed to:

> (1)  Call witnesses supplied by [Harris] for a potential alibi;
>
> (2)  Follow through with [Harris'] appeal; and
>
> (3)  Impeach the credibility of [Harris'] co-defendants by:
>
>> (a)  Properly cross-examining [Harris'] co-defendants; and
>>
>> (b)  Introducing and cross-examining the surveillance video.

PCRA Court Opinion ("P.C.O."), 5/12/2014, at 2-6 (minor grammatical and capitalization alterations made for clarity; references to notes of testimony omitted).

The PCRA court scheduled a hearing for December 10, 2013.  The primary purpose of that hearing was to ascertain whether Harris' PCRA petition was timely filed according to the strict time constraints set forth in the PCRA.  *See* 42 Pa.C.S. § 9545(b)(1).  However, on December 4, 2013, counsel for Harris filed an amended PCRA petition, in which Harris identified two individuals, James Jeter and Beverly Harris, as witnesses at the PCRA hearing.  The hearing proceeded as scheduled on December 10, 2013, but the PCRA court continued the hearing in part due to the late notice by Harris regarding his witnesses.

At the conclusion of the hearing, the PCRA court issued an order in which the court determined that the petition was timely.[1]  The court also

---

[1]  For purposes of timeliness, Harris contended that he did not know initially that his attorney did not file a brief and that his direct appeal had
*(Footnote Continued Next Page)*

scheduled another hearing for the parties to present testimony regarding Harris' claims of ineffective assistance of counsel, which included claims that trial counsel failed adequately to cross-examine Jeter, that trial counsel failed to meet with Harris before trial, that trial counsel failed to file an appellate brief, that trial counsel failed to meet with Harris' mother, Beverly Harris, to establish or confirm an alibi defense, and that counsel failed to present the surveillance video at trial and failed to cross-examine Zombro and Jeter about the contents of the video.

The PCRA court held a hearing on January 20, 2014. At the hearing, Harris' mother testified regarding Harris' alibi on the night of the incident. Jeter testified that he lied at trial when he implicated Harris in the theft. The PCRA court found Jeter's testimony to be incredible. Regardless, the PCRA court held that trial counsel was ineffective for failing to file an appellate brief. The PCRA court then continued the hearing for additional testimony.

On January 30, 2014, the court reconvened the hearing. The Commonwealth called two witnesses to counter Beverly Harris' alibi testimony. At the conclusion of the hearing, the PCRA court held that trial

_(Footnote Continued)_ ———————

been dismissed. He further contended that he filed his PCRA petition within sixty days of when he actually learned that his appeal had been dismissed. Relying upon 42 Pa.C.S. § 9545(b)(1)(ii) (newly-discovered fact exception) and § 9545(b)(2) (sixty-day time limit to file a PCRA petition based upon one of the exceptions), the PCRA court ruled that the petition was timely. The Commonwealth does not contest that ruling in this appeal. Hence, we will not consider the PCRA court's application of the exception, and we have jurisdiction over this appeal.

counsel was not ineffective for electing to forego an alibi defense. On May 12, 2014, the PCRA court issued an order and opinion. In the order, the Court held that trial counsel was not ineffective for failing to call any other witnesses at trial. However, consistent with its earlier holding, the PCRA court again held that trial counsel was ineffective for failing to file an appellate brief. Moreover, trial counsel was ineffective for failing to introduce the surveillance video as evidence at Harris' jury trial, and for failing to cross-examine Jeter and Zombro regarding the number of individuals that the video showed compared to how many they claimed in their testimony were involved in the heist. Accordingly, the PCRA court granted Harris' PCRA petition, vacated his sentence, and awarded him a new trial.

The Commonwealth appealed the decision to this Court. This Court entered an order affirming in part, and reversing in part the PCRA court's order. We held that, once the PCRA court found counsel to be ineffective for failing to file an appellate brief, the correct remedy was to reinstate Harris' direct appellate rights. Once done, the court could not also award Harris a new trial. We remanded the case without prejudice to Harris' right to forego the direct appeal, and, essentially, recommence his PCRA proceedings and seek the same relief that the PCRA court had already granted. The PCRA court met with the parties to discuss Harris' options. Harris elected to forego his direct appeal, and to reinstate his PCRA petition. On May 11, 2015, the PCRA court incorporated the prior proceedings, and again granted

Harris' PCRA petition based upon counsel's ineffectiveness regarding the surveillance videos.

On May 15, 2015, the Commonwealth filed a notice of appeal. On May 26, 2015, the Commonwealth filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On June 11, 2015, the PCRA court issued a statement pursuant to Pa.R.A.P. 1925(a), in which the court directed this Court to the reasoning and analysis that the court set forth in its May 12, 2014 order and opinion.

The Commonwealth raises the following issue for our review: "Did the PCRA court err in granting [Harris'] PCRA petition when trial counsel effectively represented [Harris] by making strategic decisions during [Harris'] trial?" Brief for the Commonwealth at 13. For the reasons articulated below, we disagree with the Commonwealth, and we hold that the PCRA court did not err.

The governing legal standards attendant to our review in the PCRA context are well-defined: "[A]n appellate court reviews the PCRA court's findings of fact to determine if they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error." **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014) (citing **Commonwealth v. Colavita**, 993 A.2d 874, 887 (Pa. 2010)). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." **Id.** (citing **Commonwealth v. Sam**, 952 A.2d 565, 573 (Pa. 2008)).

Furthermore, the PCRA court's credibility determinations, when supported by the record, are binding upon this Court. **Commonwealth v. Johnson**, 966 A.2d 523, 532, 539 (Pa. 2009). We apply a *de novo* standard of review with regard to the PCRA court's legal conclusions. **Commonwealth v. Rios**, 920 A.2d 790, 810 (Pa. 2007).

The Commonwealth challenges the PCRA court's conclusion that trial counsel was ineffective. Our standard of review in this context is well-defined:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." **Colavita**, 993 A.2d at 886 (citing **Strickland v. Washington**, 466 U.S. 668, 690 (1984)). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See Commonwealth v. Pierce**, 527 A.2d 973, 975-77 (Pa. 1987). Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, 66 A.3d 253, 260 (Pa. 2013).

**Spotz**, 84 A.3d at 311 (internal citations modified). We need not analyze "the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the [**Pierce**] test,

the court may proceed to that element first." ***Commonwealth v. Lambert***, 797 A.2d 232, 243 n.9 (Pa. 2001). Furthermore, "counsel will not be considered ineffective for failing to pursue meritless claims." ***Commonwealth v. Pursell***, 724 A.2d 293, 304 (Pa. 1999) (citing ***Commonwealth v. Parker***, 469 A.2d 582, 584 (Pa. 1983)).

The PCRA court concluded that trial counsel was ineffective because she failed to introduce at trial the surveillance video from Ames Auto Sales that showed that four actors participated in the theft of, and damage to, vehicles on the lot. The Commonwealth's two key witnesses against Harris, Jeter and Zombro, both unequivocally testified that only three people were involved in the robbery. It is undisputed that counsel had the video in her possession at the time of trial. Nonetheless, trial counsel elected not to play the video for the jury, which, at minimum, would have proven that Jeter and Zombro's version of events was inaccurate. We must consider whether this decision amounted to ineffective assistance of counsel.

Although the Commonwealth recites the three-pronged test for claims of ineffective assistance of counsel, the Commonwealth does not contend that Harris' claim lacks arguable merit. Thus, the Commonwealth has conceded that prong, and we move directly to the final two prongs of the test.

With regard to the reasonable basis prong, an appellate court may not "question whether there were other more logical courses of action which

counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007). Counsel's chosen strategy lacked a reasonable basis only if a PCRA petitioner has proven that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Williams*, 899 A.2d 1060, 1064 (Pa. 2006) (citation omitted). Here, we do not hesitate to conclude that the alternative, *i.e.*, playing the video for the jury, offered Harris a substantially greater opportunity for success.

The Commonwealth had no direct evidence to implicate Harris in the theft. Instead, the Commonwealth relied upon two of the individuals who were known to have been involved in the theft: Jeter and Zombro. Initially, Zombro told the police that four individuals participated in the crimes. He did not name Harris as one of those men. He named himself, Jeter, "Saint" Santiago, and a man named Michael Ratcliff. Zombro provided the police with a written statement to this effect.

A few months later, Zombro changed his story. In his second meeting with the police, and with his mother present, Zombro again stated that four people were involved in the incident, but again did not implicate Harris as being one of those men. He told the police that the four men were himself, Jeter, "Saint" Santiago, and a man known to him as "Crunch." Zombro admitted that Harris is neither "Saint" Santiago nor "Crunch." To the

contrary, Zombro told the police that he thought that Harris was incarcerated at the time of the incident. Zombro reduced this version of events to writing as well.

A week later, Zombro offered the police a third version of events. This time, Zombro insisted that only three people participated in the crimes. Zombro initially implicated himself, Jeter, and "Crunch." However, his story clearly was evolving as he told it. When the police told Zombro that they knew that "Crunch" was not involved in the case, Zombro, for the first time, stated that Harris was the third person involved. Zombro never reverted to the version of his story that involved four people.

Jeter similarly told the police that only three people were involved in the caper. Jeter admitted to his involvement, and informed the police that Zombro and Harris were the other two men involved.

At trial, Jeter and Zombro maintained their story that only three people were present during the crimes at Ames Auto Sales. The Commonwealth did not present the video to the jury. The video was not sufficiently clear to depict the faces of the perpetrators, and, thus, no one could be definitively identified. More importantly, however, the video was inconsistent with the testimony of the Commonwealth's witnesses. It clearly showed that four people were involved in the crime, not three as the Commonwealth's witnesses insisted at trial. The Commonwealth's decision not to play the video emphasizes the value that it had to the defense.

Indeed, it is fair to conclude that the Commonwealth did not play the video because it severely damaged the credibility of the Commonwealth's key witnesses, and it undercut the Commonwealth's case.

There was no physical evidence implicating Harris in the crimes. He could not be identified from the video. The police were unable to find any fingerprints at the scene that would place Harris there on the night in question. Harris did not admit to being involved. There is no doubt that the Commonwealth's case against Harris rested almost exclusively upon the testimony of Jeter and Zombro, and, necessarily, their credibility.

Defense counsel cross-examined Jeter and Zombro regarding their inconsistent statements, and attacked their credibility based upon those inconsistent versions of events, their criminal backgrounds, and their participation in the crimes at issue. However, counsel had one piece of evidence that would have definitively demonstrated that the web of events that Jeter and Zombro spun at trial was, at least in part, not true: the surveillance video. Traditional cross-examination obviously was not enough to exculpate Harris. But, counsel did not have to resort solely to traditional cross-examination. The video from the lot conclusively demonstrated that Jeter and Zombro were not telling the entire truth. That the video demonstrates that they both were not forthright to the jury (or the police and prosecutor) about the events in question also strongly suggests collusion between Jeter and Zombro in an effort to tell a unified, but untrue,

story. The jury was denied the opportunity to assess their testimony fully, and that was due to counsel's decision not to show them compelling and conclusive evidence that significantly discredited the Commonwealth's case.

Nonetheless, our task is not simply to decide whether counsel should have played the tape for the jury. We must decide whether the decision not to do lacked a reasonable basis, and whether playing it would have provided Harris with a greater opportunity for success at trial. Trial counsel asserted at the PCRA hearing that she decided not to introduce the video at trial if the Commonwealth did not do so first. She claimed that she did not want to present any evidence that could possibly tie Harris to the crime, and did not want the jury to draw negative inferences against Harris when viewing the video. Counsel's decision was palpably unreasonable. Trooper Franklin Linn testified at the PCRA hearing. The trooper testified that the video did not provide a clear picture of any of the actors. In fact, he testified that the video did not clearly depict any characterizing features such as height, weight, gender, clothing, etc. Thus, counsel's concern that the jury would have identified Harris, and then linked him to the video, was entirely unwarranted. Trooper Linn testified that the **only** thing that the video could show was the number of individuals involved. There was no possibility that the jury could have identified Harris from the video. Counsel's concern to the contrary was unreasonable. The only value that the video had was to show that four, rather than three, people were involved, a fact that would

have raised incontrovertible, and probably insurmountable, problems with Jeter's and Zombro's testimony.

Counsel did not assert a reasonable basis for not showing the video, and we discern none from the record or from any viable trial strategy that we can envision. The video would have done invaluable damage to the credibility of the two essential pieces of the Commonwealth's case. Counsel had this arrow in her arsenal, yet she never elected to remove it from her quiver. To not do so was unreasonable, and could not have been designed to effectuate Harris' best interests. Harris would have had a substantially better opportunity to win the case had counsel played the video for the jury.

We now turn to whether counsel's unreasonable decision caused prejudice to Harris. To establish prejudice in the PCRA context, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. ***Commonwealth v. Dennis***, 950 A.2d 945, 954 (Pa. 2008). Once more, the Commonwealth's case rested almost entirely on the testimony of Jeter and Zombro. No other evidence could link Harris to the crime beyond a reasonable doubt. To convict Harris, the jury must have credited these two witnesses, at least in part. Counsel cross-examined Jeter and Zombro in an attempt to discredit their version of events, but to no avail. These traditional cross-examination tactics were insufficient to convince the jury that Jeter and Zombro were lying. However, counsel had

definitive proof that they were not telling the truth about one main aspect of the case, and possibly the rest of their testimony. That there were four people involved in the case, of course, does not prove that Harris was not involved in the case. But, it does prove that Jeter and Zombro were lying, and strongly suggests that they colluded in fabricating a materially false story. We cannot say that definitive proof that the Commonwealth's main witnesses lied on the stand would have guaranteed a different verdict. But, that is not the legal standard that we must employ. Because the Commonwealth could only prove its case with the testimony of Jeter and Zombro, and because the video proved that their testimony was false in one major aspect, there is a reasonable probability that but for counsel's decision not to play the video for the jury would have resulted in a different verdict. **See Dennis**, *supra*.

The PCRA court's decision was supported by the record, and the court's legal conclusions were correct. Consequently, we affirm the order granting Harris' PCRA petition, and we remand for a new trial.

Order affirmed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/15/2015