J-S40008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONAS M. KING | : | |
| | : | |
| Appellant | : | No. 2533 EDA 2018 |

Appeal from the Order Dated July 30, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000913-2009

BEFORE:   SHOGAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 11, 2020**

Appellant, Jonas M. King, appeals from the July 30, 2018 order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  After review, we affirm.

The relevant facts and procedural history of this matter were set forth by the PCRA court as follows:

FACTUAL HISTORY

The facts giving rise to the instant charges were previously summarized by the trial court as follows:

On October 16th, 2008, at approximately 11 pm, Jonas King (Appellant) and Edwin Collazo … left a bar located near 52nd and Columbia Avenues and walked north on 52nd Street in the City and County of Philadelphia.[1] N.T. 1/20/10, pgs 63-64. Kendall Scott

---

[*] Retired Senior Judge assigned to the Superior Court.

(decedent) and Shanika Thorne were also walking north on 52nd Street after returning from a neighborhood store. N.T. 1/15/10, pg. 221. As the couple passed Appellant, he looked at Scott and yelled "What the f*ck you looking at!" N.T. 1/15/19, pgs. 183, 223; 1/20/10, pgs. 64, 67; 1/21/10, pgs. 49. Scott and Thorne continued to walk past Appellant and Collazo. N.T. 1/20/10, pgs. 63-64. As they passed, Appellant pulled a gun from his pants and shot Kendall Scott once in the back of the head and once in the back. N.T. 1/15/10, pgs. 49, 105, 118, 187, 223, 230-231; 1/20/10 pgs. 16, 65-67, 69, 142, 145, 197; 1/21/10 pgs. 86, 88. Thorne ran to call the police. N.T. 1/15/10 pgs. 67, 188, 229-230; 1/20/10 pgs. 69, 145.

> [1] Earlier in the evening, Appellant had been in a physical altercation with another male. Appellant and Collazo were in the bar looking for that person. N.T. 1/20/10, pgs. 63-64.

Appellant and Collazo left the scene and walked down 52nd street. N.T. 1/15/10 pgs. 54; 105-106. As Appellant walked through the Sunoco parking lot he yelled, "Who want it next?" N.T. 1/15/10, pg. 106.

Kendall Scott sustained a gunshot wound to the back of his head and one to his back which pierced his lung. N.T. 1/20/10, pg. 197.

[Appellant] and Edwin Collazo were identified in photo array and subsequently apprehended. N.T. 1/15/10, pgs. 78, 119-120; 1/20/10 pgs. 111, 162-163, 166-167, 184; 1/21/10 pgs. 29, 35; 1/20/10 pg. 83; 1/21/10 pgs. 20.21.

(Trial Court Opinion, 11/17/10, pgs. 1-2).

PROCEDURAL HISTORY

[Appellant] was arrested and charged with [murder and weapons offenses] on October 27, 2008. On January 13, 2010[,] the case proceeded to a jury trial before the Honorable Renee

Cardwell Hughes[,] and on January 22, 2010[,] the jury returned a verdict of guilty [of first degree murder, possession of a firearm by a prohibited person, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, and possessing an instrument of crime.[1] N.T. (Trial/Sentencing), 1/22/10, at 86-93]. The trial court then imposed an aggregate sentence of life imprisonment.

Following the denial of post-sentence motions, Appellant filed a timely Notice of Appeal to the Superior Court which affirmed Appellant's judgment of sentence on June 24, 2011. [*Commonwealth v. King*, 31 A.3d 753, 1124 EDA 2010 (Pa. Super. filed June 24, 2011) (unpublished memorandum).] A subsequent Petition for Allowance of Appeal was denied on November 22, 2011. [*Commonwealth v. King*, 34 A.3d 82, 444 EAL 2011 (Pa. filed November 22, 2011).]

On August 30, 2012, Appellant filed a pro se PCRA petition. On February 24, 2016 present counsel was appointed.[2] On August 17, 2017, present counsel filed an amended PCRA petition, followed by a Supplemental PCRA petition. Following the filing of a Motion to Dismiss on March 29, 2018, this Court dismissed Appellant's amended petition and supplemental petition without a hearing on July 30, 2018.

> [2] Appellant had two prior attorneys who were permitted to withdraw.[2]

PCRA Court Opinion, 7/25/19, at 1-4. On August 27, 2018, Appellant filed a timely appeal. Both the PCRA court and Appellant complied with Pa.R.A.P. 1925.

---

[1] 18 Pa.C.S. §§ 2502(a), 6105(a)(1), 6106(a)(1), 6108(a), and 907(a), respectively.

[2] The lack of progress in this matter between the date Appellant filed his timely first *pro se* PCRA petition on August 30, 2012, and the appointment of current counsel on February 24, 2016, is neither immediately apparent from the record, nor is it discussed by Appellant in his brief.

On appeal, Appellant raises the following issue:

1) The PCRA Court erred in finding that [Appellant's] request for relief pursuant to the PCRA lacked arguable merit and did not establish prejudice in connection with his claim that trial counsel was ineffective in failing to object to the [t]rial [c]ourt's structurally erroneous instruction on reasonable doubt which required by example that any juror's doubt must be grave and serious before he or she could vote to acquit.

Appellant's Brief at 5.

When reviewing the propriety of an order denying PCRA relief, we consider the record in the light most favorable to the prevailing party in the PCRA court. *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015); *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Robinson*, 139 A.3d 178, 185 (Pa. 2016). These errors include a constitutional violation or ineffectiveness of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Cousar*, 154 A.3d 287, 296 (Pa. 2017); 42 Pa.C.S. § 9543(a)(2). The PCRA court's findings will not be disturbed unless there is no support for them in the certified record. *Commonwealth v. Lippert*, 85 A.3d 1095, 1100 (Pa. Super. 2014).

Appellant's issue on appeal involves an allegation that trial counsel was ineffective. It is well settled that counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [the petitioner]."

*Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, the petitioner must plead and prove by a preponderance of the evidence that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Housman*, 226 A.3d 1249, 1260 (Pa. 2020) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any one of these three prongs. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

Appellant contends that trial counsel was ineffective for failing to object to the trial court's jury instructions. Appellant's Brief at 12. Specifically, Appellant asserts that a portion of the trial court's jury instruction regarding reasonable doubt relieved the Commonwealth of its burden of proof and constituted a structural error in the proceedings, and trial counsel's failure to object constituted ineffective assistance of counsel. *Id.* at 14-15.

The challenged portion of a jury instruction is reviewed in light of the entire instruction. *Commonwealth v. Cam Ly*, 980 A.2d 61, 88 (Pa. 2009) (citation omitted). Moreover, trial courts have broad discretion in phrasing the jury charge so long as the law is clearly, adequately, and accurately described. *Id.* (citation omitted). "[A]n imperfect instruction does not

- 5 -

constitute reversible error where the charge, taken as a whole, fairly and accurately conveys the essential meaning." ***Commonwealth v. Uderra***, 862 A.2d 74, 92 (Pa. 2004).

The trial court's jury charge concerning reasonable doubt is set forth below:

[I]t is always the Commonwealth's burden to prove a citizen guilty beyond a reasonable doubt. It is not [Appellant's] burden to prove that he is not guilty. The Commonwealth bears this burden of proving each and every element of the crimes charged, and when I say element of the crimes charged, crimes are defined by the legislature and the definition is elements. In order to have the crime of X, you must find A, B, C. The Commonwealth's burden is to prove the elements of the crimes that have been charged in this proceeding and to prove them beyond a reasonable doubt.

Now, although the Commonwealth bears this burden, and it is a high burden. This is the highest burden in the law. The Commonwealth is not required to prove this case beyond all doubt. The Commonwealth is not required to meet some sort of mathematical certainty, nor must the Commonwealth demonstrate the complete impossibility of innocence.

A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to pause, to hesitate or to refrain from acting upon a matter of the highest importance to their own affairs. A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to some element of each of the crimes charged.

**I find it helpful to think about reasonable doubt this way. Because I was fortunate to speak to each and every one of you individually, I know each one of you has someone in your life that you love, someone who is absolutely precious to you; a spouse, a significant other, a child, a grandchild. Each one of you loves someone dearly.**

**If you were told by your loved one['s] physician that they had a life-threatening condition and that the only appropriate protocol for that life-threatening condition was**

**surgery, you would probably ask for a second opinion. You might even ask for a third opinion. If you're like me you're going to go on the internet and you're going to find out, well, what is this condition. Only you can't use the internet in this proceeding, but hypothetically you are going to do all the research you can do. You are going to call everybody you know in medicine, what is this disease, what do you do, how do you treat it, who is the best doc to treat it. But at some moment the question will be called. If you go forward with the surgery, it's not because you have moved beyond all doubt. There are no promises. There are no guarantees. If you go forward, it's because you have moved beyond all reasonable doubt.**

Ladies and gentlemen, a real doubt, it is not a manufactured doubt. A reasonable doubt must be a real doubt. You cannot make up a doubt to avoid carrying out an unpleasant responsibility. Now, you may not find [Appellant] guilty based upon a mere suspicion of guilt. The Commonwealth bears its burden of proving [Appellant] guilty beyond a reasonable doubt. If the Commonwealth has met that burden, however, then [Appellant] is no longer presumed to be innocent and you should find him guilty. On the other hand, if the Commonwealth has not met its burden, you must find [Appellant] not guilty.

N.T. (Trial/Sentencing), 1/22/10, at 17-20 (emphasis added).[3]

Appellant contends that the trial court's analogy, wherein it compared finding reasonable doubt to deciding whether a loved-one should undergo surgery, improperly "injected a level of concern, urgency and graveness and thereby raised the threshold for what constitutes reasonable doubt." Appellant's Brief at 16. Appellant asserts that the instruction "relieved the Commonwealth of its high burden to prove guilt beyond a reasonable doubt."

---

[3] The portion of the jury instruction that Appellant contends is improper is emphasized in bold-face type. Appellant's Brief at 13-14.

*Id.* (citing *Cage v. Louisiana*, 498 U.S. 39 (1990)). Additionally, Appellant avers that the trial court's hypothetical "omitted critical aspects of the governing standard" and conflated the concepts of "refraining from acting" and "hesitating to act." *Id.* at 17-18.

Appellant cites *Cage* for the proposition that injecting words such as "substantial" or "grave" into the definition of reasonable doubt could lower the prosecution's burden of proof. Appellant's Brief at 16. Although Appellant's assertion is an accurate assessment of *Cage*, the Supreme Court subsequently clarified the holding in *Cage* and stated that when deciding whether a jury instruction is unconstitutional, "the proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (emphasis in original) (citing *Estelle v. McGuire*, 502 U.S. 62, 72, and n.4 (1991)).

Moreover, although the trial court's analogy may have focused on refraining from acting as opposed to hesitating from acting, we cannot agree that this finite aspect of the instruction as a whole alters the reasonable-doubt standard. As the PCRA court pointed out, the Pennsylvania Supreme Court has upheld reasonable doubt instructions that focus on restraint from acting. PCRA Court Opinion, 7/25/19, at 9 (citing *Commonwealth v. Sattazahn*, 952 A.2d 640 (Pa. 2008)). In *Sattazahn*, the appellant argued that the trial court altered the reasonable doubt standard when it used the word "refrains"

as opposed to "hesitate." **Sattazahn**, 952 A.2d at 668. Our Supreme Court disagreed with the appellant and concluded the trial court's word choice did not amount to reversible error due to the wide latitude given to judges in crafting their instructions and the fact that federal and state courts have upheld charges using identical, or substantially similar language. **Id.** at 668-669, and n.20.

Although Appellant takes issue with one aspect of the charge, we reiterate that jury instructions must be viewed in their entirety. **Cam Ly**, 980 A.2d at 88. Herein, the trial court correctly defined reasonable doubt as follows: "A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to pause, to hesitate or to refrain from acting upon a matter of the highest importance to their own affairs." N.T. (Trial/Sentencing), 1/22/10, at 18. We conclude that this language is substantially similar to Pennsylvania's Suggested Standard Jury Instruction for reasonable doubt in criminal matters which provides in pertinent part that "A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his or her own affairs." 7.01 Presumption of Innocence—Burden of Proof—Reasonable Doubt, Pa. SSJI (Criminal), §7.01; **Commonwealth v. Jones**, 912 A.2d 268, 287 (Pa. 2006) (plurality), *cited with approval in* **Commonwealth v. Cook**, 952 A.2d 594, 630 (Pa. 2008)).

The trial court's jury charge defined reasonable doubt and informed the jury that it could find Appellant guilty only if it found that the Commonwealth proved the elements of the crimes beyond a reasonable doubt. N.T. (Trial/Sentencing), 1/22/10, at 17-20. When we review the trial court's surgery analogy in conjunction with the trial court's proper definition of reasonable doubt and the instruction as a whole, we do not conclude that there is a reasonable likelihood that the jury applied the instruction concerning reasonable doubt in an unconstitutional manner. *Victor*, 511 U.S. at 5.

After review, we discern no basis upon which to conclude that the jury relied on the trial court's reference to surgery and applied a standard below reasonable doubt. As stated, in its charge, the trial court provided a proper definition of reasonable doubt. We find no error in the PCRA court's conclusion that Appellant's claim of trial counsel's ineffectiveness for failing to object to the jury instruction lacked merit.[4] PCRA Court Opinion, 7/25/19, at 10; *see*

_____

[4] Claims of error nearly identical to Appellant's have been presented on appeal to no avail. *See e.g., Commonwealth v. Nam*, 221 A.3d 301, 3641 EDA 2018 (Pa. Super. filed August 21, 2019) (non-precedential decision) (concluding that a claim that trial counsel was ineffective for failing to object to the Honorable Renee Cardwell Hughes's surgery analogy in her jury instruction on reasonable doubt lacked merit under the PCRA); *Commonwealth v. Moore*, 225 A.3d 1155, 3211 EDA 2017 (Pa. Super. filed December 13, 2019) (non-precedential decision) (same); *Commonwealth v. Santiago*, ___ A.3d ___, 3639 EDA 2018 (Pa. Super. filed August 20, 2020) (non-precedential decision) (same); *Commonwealth v. Warner*, ___ A.3d ___, 2171 EDA 2019 (Pa. Super. filed September 18, 2020) (non-precedential decision) (same and alternatively concluding there was no prejudice). However, Appellant mentions that this argument was raised successfully by a

*also Commonwealth v. Cox*, 863 A.2d 536, 549 (Pa. 2004) (trial counsel

cannot be deemed ineffective for failing to object to a proper jury instruction).

Because we agree with the PCRA court that Appellant's claim lacks

arguable merit, we need not reach the prejudice prong of the test for

ineffective assistance of counsel. *Martin*, 5 A.3d at 183. However, if we were

to address the prejudice prong, we would agree with the PCRA court that even

if counsel had objected to the jury instruction, it would not have altered the

result of the trial. PCRA Court Opinion, 7/25/19, at 10-12. "Appellant's

convictions were due to the overwhelming evidence against him not the trial

court's reasonable doubt instruction." *Id.* at 10.

The trial court summarized the evidence against Appellant and

concluded as follows:

> Shanika Thorne testified that one of the two men passing her and
> the victim asked, "what the fuck you looking at" and that one of
> the males then shot the victim in the back of the head. (N.T.
> 1/15/10, pgs. 223-224). Edwin Callozo, [A]ppellant's companion
> that night, identified Appellant as the shooter in his preliminary
> hearing testimony which was admitted as substantive evidence at
> trial. (N.T. 1/20/10, pgs. 63-72). This identification was further
> corroborated by multiple eyewitnesses. Linda Harris testified that

_____

petitioner in pursuit of a writ of *habeas corpus* in federal court. Appellant's
Brief at 23. In *Brooks v. Gilmore*, No. 15-5659, 2017 WL 3475475 (E.D. Pa.
filed Aug. 11, 2017) (unpublished memorandum), a federal district court
concluded a similar jury instruction given by the same trial judge was
unconstitutional and ordered a new trial. Nevertheless, this argument has not
prevailed in any precedential decision, and we are not bound by the decision
in *Brooks*. *See Commonwealth v. Natividad*, 200 A.3d 11, 36 (Pa. 2019)
(providing that although we are required to follow the decisions of the United
States Supreme Court, we are not bound by the opinions of inferior federal
courts).

moments before the shooting she was passed by two men and that the taller of the two, appeared to be angry and cursing and asked her, "what the fuck you looking at." (N.T. 1/15/10, pgs. 181-183). When shots rang out immediately thereafter, she observed the taller male with what appeared to be a gun in his hand. (N.T. 1/15/10, pgs. 186-187, 205). Edaa Zaki was working in a nearby pizza shop when he heard the shots and saw the victim fall to the ground. In his statement to police, Zaki identified Appellant as the person he observed leaving the scene with a gun in the company of a second man. (N.T. 1/15/10, pgs. 49, 61-62, 68-71). Alfonzo Atkins, likewise observed Appellant leaving the scene through a Sunoco parking lot. Atkins testified that as he did so, Appellant was holding something at his hip and stated, "who want it next." (N.T. 1/15/10, pgs. 106, 116). In light of such testimony, Appellant cannot claim that the outcome of the proceeding would have been different but for the trial court's hypothetical in its reasonable doubt instruction. As a result, he has failed to establish the prejudice needed to obtain relief. [*Commonwealth v.*] *Lambert*, [797 A.2d 232, 243-244 (Pa. 2001)]; *Commonwealth v. Garvin*, 485 A.2d 36 (Pa. Super 1984) (no relief due where counsel's alleged error had no effect on the outcome).

PCRA Court Opinion, 7/25/19, at 10-12.

We are cognizant that Appellant contends that the jury instruction constituted a "structural error" and prejudice must be presumed. Appellant's Brief at 22 (citing **Sullivan v. Louisiana**, 508 U.S. 275 (1993)). However, Appellant does not address the distinction between the presumption of prejudice on direct appeal and the prejudice that must be proven in the context of ineffective assistance of counsel under the PCRA.

In **Weaver v. Massachusetts**, ___ U.S. ___, 137 S.Ct. 1899 (2017), the United States Supreme Court discussed this distinction:

> The question then becomes what showing is necessary when the defendant does not preserve a structural error on direct review but raises it later in the context of an ineffective-assistance-of-

counsel claim. To obtain relief on the basis of ineffective assistance of counsel, the defendant as a general rule bears the burden to meet two standards. First, the defendant must show deficient performance—that the attorney's error was "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." ***Strickland v. Washington***, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, the defendant must show that the attorney's error "prejudiced the defense." ***Ibid.***

***Weaver***, ___ U.S. at ___, 137 S.Ct. at 1910.

When a structural error is preserved and raised on direct review, the balance is in the defendant's favor, and a new trial generally will be granted as a matter of right. When a structural error is raised in the context of an ineffective-assistance claim, however, finality concerns are far more pronounced. For this reason, and in light of the other circumstances present in this case, **petitioner must show prejudice** in order to obtain a new trial.

***Id.*** ___ U.S. at ___, 137 S.Ct. at 1913 (emphasis added).

Additionally:

The U.S. Supreme Court has emphasized that there are only "three categories of cases, described in ***Strickland***, in which we presume prejudice rather than require a defendant to demonstrate it." [***Smith v.***] ***Robbins***, 528 U.S. [259] at 287, 120 S.Ct. 746 [(2000)]. Those categories involve claims demonstrating (1) an actual denial of counsel, (2) state interference with counsel's assistance, or (3) an actual conflict of interest burdening counsel. ***Id.***

***Commonwealth v. Lambert***, 797 A.2d 232, 245 (Pa. 2001).

Because Appellant's claim of error concerning counsel's failure to object to the jury instruction does not fall into the categories enumerated in ***Robbins***, prejudice is not presumed. ***Lambert***, 797 A.2d at 245. Rather, Appellant is required to establish prejudice. ***Weaver***, ___ U.S. at ___, 137 S.Ct. at 1910. Correspondingly, we reiterate that if we were to reach the

prejudice prong of the test for ineffective assistance of counsel, we would agree with the PCRA court that Appellant has not established prejudice; *i.e.*, counsel's failure to object had no impact on the outcome of Appellant's trial. PCRA Court Opinion, 7/25/19, at 12; **Housman**, 226 A.3d at 1260.

For the reasons set forth above, we discern no abuse of discretion or error of law in the PCRA court's order denying Appellant's PCRA petition. Accordingly, we affirm.

Order affirmed.


*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*


Date: *12/11/2020*